[No. 12311.   Department Two.   June 3, 1915.]

SOPHIE J. MYERS et al., Appellants, v. CALHOUN, DENNY & EWING, now C. D. & E. Investment Company, Respondent.[1]

VENDOR AND PURCHASER—RESCISSION BY PURCHASER — MISREPRESENTATIONS—SUFFICIENCY OF EVIDENCE. Rescission of a contract for the sale of land will not be granted for fraud in representing that the land was adapted to the raising of high grade winter apples, where the testimony as to the adaptability of the land for orchard purposes was conflicting and there was testimony to the effect that alfalfa was prospering on the land, that the plaintiffs spent only a few months on the land preparing it for irrigation and planting, and after finding that the expense was greater than they anticipated, sought to get a reduction in the price; that plaintiffs, while not practical farmers, possessed the powers of observation and judgment and had opportunities to observe the soil and condition of neighboring orchards planted upon land of the same character; and did not attempt to rescind until more than two years after the purchase, at a time when they were in default upon payments due, lien claims had been filed against the land for work thereon, the lands in that locality had depreciated in value, and attempts to resell the property had failed.

[1]Reported in 149 Pac. 19.

VENDOR AND PURCHASER—RESCISSION BY VENDOR—WAIVER—NECESSITY OF DEMAND. Where the purchasers under a real estate contract for the sale of land on time payments are waging an action of rescission and thus repudiating the contract, they are not in a position to insist that no forfeiture could be declared by the vendor for nonpayment of installments due without demand made and the lapse of a reasonable time for compliance therewith.

Appeal from a judgment of the superior court for King county, Mitchell, J., entered March 30, 1914, in favor of the defendant, in an action for rescission, tried to the court. Affirmed.

*Walter S. Fulton* and *Donworth & Todd*, for appellants.

*John P. Hartman* and *Arthur E. Nafe*, for respondent.

MAIN, J.—The purpose of this action was to secure a rescission of a real estate contract, claimed to have been induced by fraudulent representations, and for damages incurred in improving the land covered by the contract. After the issues were framed, the cause was tried to the court sitting without a jury, and resulted in a judgment in favor of the defendant. From this judgment, the plaintiffs appeal.

On January 8, 1910, the defendant contracted to sell to the plaintiffs a certain tract of land consisting of approximately forty acres, located in Benton county, Washington. The purchase price of the land was $6,000. On the date the purchase money receipt was issued to W. E. Myers, one of the plaintiffs, there was paid the sum of $500. This purchase money receipt contained the provision that,

"It is expressly understood and agreed that this deposit is to be returned to the purchaser if upon inspection by him on or before February 8, 1910, the above described land is found to be not as stated in the following paragraphs: 1. The land is good fruit land of easy slopes and cultivable character. . . ."

The other paragraphs referred to are not here material.

Mr. Myers did not visit the land, owing to the fact that he was told by the sales agent, Mr. Elwell of the respondent

company, that it was then likely covered with snow. During the negotiations, which took place prior to making the initial payment and giving the purchase money receipt, the plaintiffs were given a booklet or prospectus, which contained matter descriptive of the land. The paragraph in the booklet covering the subject of soil is as follows:

"Soil. As is quite generally known, the genuine fruit soil of the Yakima Valley is denominated volcanic ash loam. This peculiar formation is found in but few parts of the country and is necessary to the production of the high quality commercial fruit of which the world has heard so much. As it varies in depth and texture in different parts of the Yakima Valley, choice of land for purely orchard purposes must be carefully made. The soil of Red Mountain Orchards is peculiarly adapted to the raising of high-grade winter apples, . . ."

The respondent at the time was selling the lands denominated in the prospectus as "Red Mountain Orchards, Yakima Valley, State of Washington." Some days after the purchase money receipt had been given, a formal contract of sale was executed. This contract is dated January 11, 1910. The purchase money receipt provided that:

"Regular contract to be executed within ten days from the date hereof."

The contract of purchase, as well as the purchase money receipt, provided that the balance of the purchase price, to-wit, $5,500, was to be paid semi-annually thereafter, on or before the dates of July 15, and January 15. Deferred payments were to draw interest at 7 per cent per annum. This contract made time the essence thereof, and provided that:

"In case of failure of the second party [the purchaser] to make any payment or perform any of the covenants made herein, at the option of the party of the first part, this contract shall be null and void, and all payments made hereunder shall be forfeited and retained by the party of the

first part in full satisfaction and liquidation of all damages sustained."

After the execution of the contract, the payments falling due on July 15, 1910, and January 15, 1911, respectively, were paid when due. With each of these payments, the accrued interest was paid.

During the month of March, 1911, the appellants moved upon the land, and employed one C. E. Morgan, who had owned and resided on land in the vicinity for a number of years, to take charge of the improvements which they contemplated making, such as clearing, grading, fencing, and planting. Under the direction of Mr. Morgan, approximately $4,000 was expended upon the land. A small portion was planted to fruit trees. The plaintiffs remained upon the land until about the first of July, 1911. They then returned to Seattle, and Mr. Myers called upon the president of the defendant company in an effort to get the price of the land reduced, because the grading and putting the land in shape for cultivation was costing more than the appellants had anticipated. No reduction in the price was made; but during the conversation, the president of the defendant company told Mr. Myers "not to worry about the payments, that they would be as easy as possible." This is the version of the conversation as given by Mr. Myers, and is not controverted in any material respect by the respondent. Soon after this conversation, Mr. and Mrs. Myers went to Arizona, where they remained until the summer or fall of 1912. The $500 payment and accrued interest due on July 15, 1911, was not paid, but on March 9, 1912, the $500 falling due on July 15, 1911, was paid. This payment did not include any accrued interest. No payment was made or tendered under the contract subsequent to the payment of $500 on March 9, 1912.

During the time the appellants were in Arizona, the land was given practically no care or attention by any one, and by reason of this fact much of the money expended in improvement was practically lost. On July 10, 1912, the ap-

pellants leased the property to one A. E. Wahn for a term of years terminating on the first day of November, 1915, for the cultivation principally of alfalfa. Little was done by Wahn under this lease because, as he testified, Mr. Myers declined to acknowledge it before a notary or other proper officer. After the return of the appellants from Arizona, and some time during the month of October, 1912, they were advised by one F. O. Huntley, a horticulturist, that the land covered by the contract was not volcanic ash loam, and was not adapted to the raising of high-grade winter apples. Thereafter, and on the 29th day of October, 1912, they caused their attorneys to address a letter to the respondent. This letter claims that the land was not as represented, and suggested reparation for the damage. What reply, if any, was made to this letter does not appear.

On January 24, 1913, the present action was instituted for the purpose, as above stated, of securing a rescission of the contract, and for damages. On the 8th day of May, 1913, the defendant answered the complaint. On August 28, 1913, the respondent served written notice upon the appellants declaring the contract cancelled for failure to make the payments as provided for, and declaring a forfeiture of all money paid, as liquidated damages. On October 15, 1913, the respondent sold and conveyed the lands covered by the contract, together with twenty-five other and adjoining acres, which last mentioned land was about half the value per acre as the first, to one Samuel Archer for the sum of $6,500; cash $5,000, and a mortgage back for $1,500. Thereafter, on October 24, 1913, Archer leased the land to A. E. Wahn, who was then in possession under his former lease from Mr. and Mrs. Myers, and contracted to sell him an undivided one-half interest therein. After the trial, a judgment was entered cancelling the contract and forfeiting to the respondent, as liquidated damages, the money which had been paid thereon.

This case presents two questions: First, Was the land covered by the contract adapted to the raising of high-grade winter apples? and second, Was the forfeiture notice given by the respondent effective?

I.  The claim that the land was not as represented is based principally upon two grounds: (a) That it was not volcanic ash loam, and (b) that it was not adapted to the raising of high-grade winter apples.  The oral representations made during the time the negotiations for the sale were pending were not in any material respect different from those contained in the prospectus.  Much of what is contained in the paragraph in the prospectus, above quoted, is the expression of an opinion.  It is not claimed that the action can be based upon anything else than a misrepresentation as to a fact.  The representation was not that the soil was volcanic ash loam, but a general statement that it was quite generally known that "the genuine fruit soil of the Yakima Valley is denominated volcanic ash loam."  This was a limitation of the term "volcanic ash loam" to what was generally denominated as such when applied to Yakima Valley.  The other statement, that "the soil of Red Mountain Orchards is peculiarly adapted to the raising of high-grade winter apples," is the one upon which the appellants mainly rely.  The appellants cite authorities for the purpose of supporting their contention that this is a representation as to a fact, while the respondent cites authorities in support of its contention that even the statement last quoted is the expression of an opinion and not the assertion of a fact.  Without reviewing these authorities, it will be assumed, for the purposes of the present case, that the representation is one of fact and not the expression of an opinion.  The question then arises whether the lands covered by the contract were in fact adapted to the raising of high-grade winter apples.  The appellants claim, and their evidence tends to support the position, that the land was not adapted to that purpose. The respondent claims that the representation that the land

was adapted to the raising of high-grade winter apples was true in fact, and the evidence introduced in its behalf tends to support this claim. It is argued, however, that the evidence of the appellants' witnesses should be given great weight because of their superior knowledge and qualifications to speak as to the character of the soil. It must be admitted that at least one of the appellants' witnesses possessed more scientific knowledge than any of the respondent's witnesses. But the testimony of this witness seems to prove too much. Among other things he testified:

"The character of the soil of these tracts is almost pure sand. I should say 99% sand, and is of no value except for building material. It is of no value whatever for agricultural purposes. It would not grow winter apples or anything else, because it lacks plant food."

This scientific testimony is met, in a measure at least, by the fact, to use the language of the trial court, that such proof is "at variance with the demonstrated fact that domestic vegetable matter, alfalfa, is prospering on the land." It seems a little strange, if the land was not as represented, that the appellants would not have discovered this fact long prior to the month of October, 1912. During the interim between the purchase and this date they had lived three or four months upon the land and expended a large sum of money in clearing and grading, preparing it for planting and irrigation. They had also attempted to dispose of the land by sale. While upon the land they had opportunities to observe the soil, and the condition of the orchards planted upon land in the community of the same character. But it was not until after this long lapse of time, when a number of payments due under the contract were in default, attempts to resell the property had failed, lien claims had been filed against the property for work performed thereon, and these and other lands of the same character had depreciated in value to the extent of 40 per cent, that they learned,

through the advice of the horticultural expert, that the soil was not volcanic ash loam, and was not adapted to the raising of high-grade winter apples. It is no answer to say that the appellants were not practical or experienced farmers, and had at no time resided upon a farm until they went upon the land in question. They were intelligent people and possessed the powers of observation and judgment. While the trial court made no findings of fact, there was necessarily inherent in the judgment which was entered a finding that the land had not been misrepresented. Otherwise there would have been a different judgment. From a careful reading of the evidence as it appears in the appellants' abstract, and the exhibits introduced in evidence, we are of the opinion that the appellants failed to show that the land was not adapted to the purpose for which it was purchased.

II. As appears from the facts above stated, the respondent, on the 28th day of August, 1913, gave notice that the contract was forfeited, and that the payments already made would be retained as liquidated damages. It is claimed that, notwithstanding the contract provided that time should be of the essence thereof, and contained a forfeiture clause, this notice was ineffective, because the term of the contract making it the essence thereof had been waived by the respondent. The rule is well settled that after a vendor has waived the essence clause of a contract, the purchaser may not be put in default until after a demand has been made upon him for a compliance with his contract, and a reasonable time has elapsed in which to comply with the demand. *Whiting v. Doughton*, 31 Wash. 327, 71 Pac. 1026; *Douglas v. Hanbury*, 56 Wash. 63, 104 Pac. 1110, 134 Am. St. 1096; *Walker v. McMurchie*, 61 Wash. 489, 112 Pac. 500; *Opsjon v. Engebo*, 73 Wash. 324, 131 Pac. 1146. But this rule does not necessarily mean that the vendor can at no time extend any indulgence to the purchaser without waiving the essence clause in the contract. *Garvey v. Barkley*, 56 Wash.

24, 104 Pac. 1108. It is only when it can be said that the language or conduct of the vendor is such as to indicate a purpose to waive the right to forfeit that such right will be denied without demand and a reasonable time to comply therewith. *Boger v. Bell*, 84 Wash. 131, 146 Pac. 179.

Whether the right to rely in the present case upon the clause in the contract making time the essence thereof was waived by the fact that one payment was accepted after it became due and the president of the defendant corporation told Mr. Myers, one of the appellants, not to worry about the payments, that they would be as easy as possible, need not now be determined. The facts in this case call for the application of a different principle. When notice of forfeiture was served, the appellants were waging the present action against the respondent, claiming a rescission of the contract. Having taken the position that the contract was or should be rescinded, the appellants were not in a position to insist that the respondent had waived its right to rely upon the essence term in the contract. They could not, in the same action, ask for a rescission and an enforcement of the contract. They were not seeking or attempting to comply with the contract, but were repudiating it.

In *Gibson v. Rouse*, 81 Wash. 102, 142 Pac. 464, the vendor withdrew real estate contracts from escrow without right. Thereupon the vendee, without tendering performance on her part, brought the action for the return of the purchase money. It was there held that the vendors "having repudiated the contract without right, they cannot complain that the respondent met them on the ground which they themselves had elected to occupy. Having themselves rescinded the contract, the respondent was relieved from an offer of performance on her part." In this case the parties are in the reverse position. Here the vendees repudiated the contract. The vendors had the right to meet them upon their own ground and claim a forfeiture without tendering per-

formance of the contract as modified by the elimination of the essence provision. The principle must be the same whether the contract be repudiated by the vendor or by the vendee. If the appellants were here desiring to perform the contract, and asking to be permitted to make the delinquent payments, a different question would be presented. It is apparent from the record that they do not desire to go forward with the contract. The land has depreciated in value and, owing to the lack of proper care, the money originally expended in improvements, while considerable in amount, has not added greatly to the value of the land.

The judgment will be affirmed.

MORRIS, C. J., ELLIS, and CROW, JJ., concur.