[No. 19288. Department One. October 23, 1925.]

A. H. ZANE et al., *Respondents,* v. A. G. HINDS et al., *Appellants,* and IGNAC SNYDAR et al., *Defendants.*[1]

VENDOR AND PURCHASER (104)—RIGHTS AND LIABILITIES OF PARTIES —POSSESSION OR CONTROL OF PROPERTY—ABANDONMENT BY VENDEE. Where, after the assignment of a contract for the purchase of a farm, the assignee defaulted in payments and abandoned the property, making it necessary for the assignor to reenter, in order to preserve the property, and to pay the installment on the purchase price, it is proper to forfeit the assignee's rights and quiet title in the assignor after, by interlocutory decree, fixing a reasonable time within which the assignee might return and perform the contract.

QUIETING TITLE (16)—RIGHT OF ACTION—CONDITIONS PRECEDENT— TENDER OF DEED. A tender of a deed is not a condition precedent to an action to quiet title, upon the default and abandonment of the premises by a purchaser under an executory contract, where nothing was asked at first more than that a time limit be fixed for defendant's performance of the contract.

SAME (33)—PROCEEDINGS—SCOPE AND EXTENT OF RELIEF. The making of improvements by the vendee without the consent of the vendor does not create an equity in the vendee superior to the vendor's right to enforce payment of the purchase money.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered November 10.

[1]Reported in 240 Pac. 6.

1924, upon findings in favor of the plaintiffs, in an action to quiet title, tried to the court. Affirmed.

*R. W. Greene,* for appellants.

*Lester Whitmore,* for respondents.

MITCHELL, J.—A. H. Zane and wife were the owners of a farm of one hundred twenty acres in Whatcom county. On February 16, 1921, they entered into a written contract with Ignac Snydar and wife, agreeing to sell the farm to them for $25,000, on the following terms: $8,500 paid by a conveyance of real property by Snydar and wife to Zane; Snydar and wife to pay an outstanding mortgage of $5,000 and interest on the Zane farm; and the balance of $11,500, with interest, to be paid within ten years, commencing November 1, 1921, in annual payments of not less than $1,000 each. Snyder and wife were given possession of the farm.

In March, 1923, at the request of Snydar and wife, Zane and wife joined them in the execution and delivery of a mortgage on the farm in the sum of $8,500 to the Washington Mutual Savings Bank of Seattle. This mortgage was given to secure a note in the same amount, payable in thirty annual payments of principal and interest. It provided that the mortgagors should permit no waste, should pay all taxes on the farm before delinquency, and provide insurance on buildings for the protection of the mortgagee. It further provided that, in case of default in any installment of the debt or a breach of any covenant expressed, the whole debt secured should, at the option of the mortgagee, become immediately due without notice and the mortgage foreclosed. The $8,500 realized from the mortgage was, by written agreement between Snydar and wife and Zane and wife, used to pay off the

first mortgage of $5,000 on the farm; $2,000 was used by Snydar in the purchase of cattle and machinery; and $1,500 was paid to Zane and wife on the purchase price of the farm. By the same written agreement, Snydar and wife promised to pay the $8,500 and interest.

In January 1924, Snydar and wife and A. G. Hinds and wife entered into a written agreement whereby Snydar and wife sold, assigned, and transferred all their rights in the Zane real estate contract, in consideration of the promise of Hinds and wife to pay $10,000 due Zane and the $8,500 mortgage and interest due the Washington Mutual Savings Bank. Hinds was conversant with all the terms of the mortgage. He was put in possession of the Zane farm by the Snydars.·

The first annual payment on the loan made by the bank became due on March 13, 1924, in the sum of $680. Upon demand on Snydar for payment, the bank was informed that Hinds had purchased Snydar's interest and had assumed and agreed to pay the mortgage. The bank demanded payment of Hinds, who replied that he was unable to pay, and made no promise for the future. Thereupon the bank, advising Zane of what it had done, made demand on him as a signer of the note and mortgage for prompt payment of the amount then due, with the threat of foreclosure proceedings in case of refusal or failure to pay. Zane paid the bank, April 2, 1924. It appears that this advice from the bank was the first notice that Zane, who resided in Benton county, had of the assignment and transfer by Snydar to Hinds. Zane then called on Hinds to collect the $680 and was refused payment. He testified:

"I spoke to him with regard to the payment and he said he couldn't make the payment and that it was

impossible for him to make the payment. I said: 'Mr. Hinds, they are going to foreclose on us.' 'Well,' he said, 'they will have to foreclose.' 'Well,' I said, 'what am I going to do?' He said, 'You will have to do the same as I do—go into bankruptcy.' When I showed him the receipt, he said: 'Well I suppose you came over to pinch me.' I told him all I wanted was my money back.''

Upon visiting the farm, Zane found it abandoned, gates were down, barn doors were open, and estrays running at large upon the place. He called on Snydar and asked him to return to the farm and fulfill his contract. Being denied, he employed a caretaker for the place and then, with his wife, began this action against Snydar and wife and Hinds and wife for a decree quieting title and for determining the rights of all the parties. All of the defendants appeared in the action; and at the conclusion of the trial, in June, 1924, the court orally announced that the defendants should have until September 10, 1924, to make payments covering their defaults, consisting of delinquent taxes for the year 1923, the semi-annual interest on the amount due Zane on the purchase price of the farm, and $680 paid the bank by Zane, with interest from April 2, 1924, in order to continue their contract rights. No payment having been made within the time limited, or at all, the trial court, on September 13, 1924, made and entered formal findings of fact, conclusions of law and an interlocutory decree.

In addition to the defaults in payments hereinabove mentioned, the court found, among other things, that Hinds and wife took possession of the farm on January 16, 1924, under the assignment from the Snydars; that the cattle on the farm had been mortgaged, and that during February, 1924, Hinds and wife sold all of the cattle and farm equipment on the farm for less than

the chattel mortgage against the same, and on or about March 10, 1924, left the farm without an attendant of any sort; that, about April 5, 1924, after demand on Hinds for repayment of the $680 made by Zane to the bank, Zane visited the farm and discovered that it was abandoned, the gates were down, barn doors open, and estray horses running at large and damaging the premises; that plaintiff drove the estrays away and placed a man in charge of the premises for the protection of the farm, and not adversely to the defendants or either of them, and laying no claim to the ensilage or hay then in the silos on the farm; that defendants, or any of them, have not demanded that plaintiffs remove the caretaker from the farm.

The court further found:

"That said defendants Hinds and wife have not in any manner indicated or expressed a bona fide intention or desire to pay said amortization installment on said $8,500 amortization mortgage, in the amount of $680; nor the taxes lawfully levied and assessed against said Zane farm for the year 1923; nor the accrued interest in the amount of $300 payable May 1st, 1924; nor have they offered any excuse whatsoever for their failure to make such payments, except their inability to pay the same; and said defendants, Snydar and wife, have not been interrupted in the performance of their contract by sickness or any adversity. That at all times plaintiffs have been and are ready, willing and able to perform their contract, and that the tendering of a deed of the Zane farm by plaintiffs to defendants, prior to the commencement of the above entitled cause, would have been futile and fruitless. That, at the time of the trial of the above entitled cause, the court orally stated its oral decision herein, and found that an extension of time until the 10th day of September, 1924, is a reasonable time to allow defendants, and each of them, to pay the delinquent taxes lawfully levied and assessed against said Zane farm for the year 1923, together with all interest accruing thereon;

and also to repay to plaintiffs the first amortization of said $8,500 amortization mortgage, together with interest thereon at the rate of 6% per annum; and also to pay the said semi-annual interest accrued upon the unpaid purchase price of said farm.''

These findings of fact were fully warranted by a preponderance of the evidence. In the conclusions of law entered at the same time, the court concluded, as a matter of equity, that the time within which the defendants should be allowed to meet the defaults found against them should be and it was extended until November 1, 1924. At the same time, an interlocutory decree was entered determining that the contract of sale of the farm should be performed, and that the defendants, and each of them, or their assigns, should make payments accordingly as they became due in the future, while as to defaulted payments the defendants, jointly and severally, were required to pay them on or before November 1, 1924; and, in the event they failed or neglected to do so, that the title to the farm should be quieted in the plaintiffs, and that the defendants and each of them should be forever enjoined from asserting any right or claim to it.

Thereafter, on November 10, 1924, upon a proper showing to and finding by the court that the defendants had failed and neglected to make such payments or any of them, and upon reciting that the defendants expressed no desire or intention of making any payment, and that neither of them requested any further extension of time within which to make any or all of such defaulted payments, a final decree was entered in favor of the plaintiffs and against the defendants adjudging the property to be free and clear of any right or claim on the part of the defendants or either of them, and especially any claim based upon the contract dated February 16, 1921, made by Zane and wife to

Snydar and wife. The defendants Hinds and wife have appealed.

The pleading and arguments of the appellants are that the respondents, in taking possession of the property in April, 1924, were trespassers, thereby committing a breach of the contract for the sale of the farm which entitled appellants to recover as damages certain amounts specified and claimed to have been expended by them on the farm. But, as already stated, the findings and proof were to the contrary. The respondents did nothing adverse or hostile to the rights of the appellants. They acted in protection of their own property. Upon the erroneous views of the appellants, a large number of assignments are presented which need not be discussed or further noticed in consideration of the outstanding, controlling fact that the appellants breached their contract and abandoned the premises at a time when the respondents were wholly without fault. Upon this suit in equity on the part of the respondents, they asked and received at first nothing more than that the appellants perform their contract, and were content that a time limit be fixed which was still further extended (of the reasonableness of which the appellants do not complain) within which the appellants should meet their undenied defaulted obligations. This leniency being ignored by the appellants who, as the trial court found, offered no "excuse whatsoever for their failure to make such payments, except their inability to pay the same," left the court and the respondents powerless to do other than the one to grant and the other to take the final judgment that is now complained of. Surely, there was no need of tendering a deed to the appellants. They were unable to meet the small amounts already defaulted. There was no occasion for an accounting, as the respondents were wholly without fault, while

the appellants had failed to comply with the terms of the agreement to pay purchase money and had abandoned the farm. In this case, the respondents have not received anything from the appellants. The making of improvements on property by a purchaser under an executory contract, beyond the control and without the consent of the vendor, does not create any equity in the purchaser superior to the equity of the vendor to enforce payment of the purchase money, where the vendor is without fault and the purchaser is guilty of failure or inability to meet his obligation and abandons the property on which the improvements were placed.

Affirmed.

TOLMAN, C. J., PARKER, and ASKREN, JJ., concur.