In re GUNNING et ux.

NEELY v. GUNNING et ux.

No. 9858.

Circuit Court of Appeals, Ninth Circuit.

Dec. 4, 1941.

Rehearing Denied Jan. 8, 1942.

John T. Raftis, of Colville, Wash., and Robertson & Smith, of Spokane, Wash., for appellant.

Brown & Huneke, Lawrence H. Brown, and John Huneke, all of Spokane, Wash., for appellees.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

William Gunning and his wife, Opal Gunning, residing in the State of Washington, on November 25, 1940, filed a petition as farm debtors asking for relief under § 75 of the Bankruptcy Act, 52 Stat. 939, 11 U.S.C.A. § 203. As a part of their assets they included a conditional sales contract dated September 29, 1938, wherein J. W. Neely, appellant, was vendor, and the alleged farmer debtors were purchasers of certain farm lands therein described, and of certain personal property used in the operation of the farm.

The vendees were in possession of the real and personal property as provided in the conditional sales agreement and have ever since continued in the possession thereof. The farm debtors, being unable to effectuate an agreement for composition and extension of their indebtedness, filed an amended petition under subdivision s of § 75, and were adjudged to be bankrupts. Thereafter, J. W. Neely, the vendor in the contract, filed

a petition in the bankruptcy court entitled a "petition to exempt real and personal property". The petition was not in the proper sense one for exemption but one for declaration that the rights of the bankrupts in and to the real and personal property covered by the conditional sales contract terminated before the institution of the bankruptcy proceeding and that the appellant was the owner of the legal and equitable title thereto and, consequently, that no property remained in the bankrupts for the bankruptcy court to administer. The petition was denied on April 23, 1941 and this appeal is taken from that order.

There is no dispute as to the facts. It is admitted that the conditional sales contract was executed, that the purchaser was in default as to payments of principal, interest and taxes. The conditional sales contract provided that the failure of the purchaser to make the required payments when due should constitute a forfeiture of the agreement, that the vendor at his option could declare the forfeiture by written notice to the purchaser, and that at the expiration of 30 days after such notice if the terms of the agreement were not complied with the vendors could enter into possession of the premises and the agreement should then be null and void and all payments made therefor by the vendee should be forfeited.[1]

The parties concede that under the laws of the state of Washington the vendee acquired, by this agreement, no legal or equitable title to the real and personal property sold (Ashford v. Reese, 132 Wash. 649, 233 P. 29; First National Bank of Seattle v. Mapson, 181 Wash. 196, 42 P.2d 782); and that the vendor, by giving notice of forfeiture, may terminate the rights of the vendees under the contract. Sleeper v. Bragdon, 45 Wash. 562, 88 P. 1036; Bedtelyon v. Otis Orchards Co., 106 Wash. 151, 179 P. 96.

It is also admitted that, under the laws of the State of Washington, when the vendor invokes the jurisdiction of a court of equity to declare a forfeiture, such a court, notwithstanding the forfeiture has been duly declared and thus effected at law, may in its discretion give a reasonable time to the vendee to make the payments in default and thus to restore the contract. Great Western Inv. Co. v. Anderson, 162 Wash. 58, 297 P. 1087. The same is true in a suit by the vendor against the vendee to quiet title. Zane v. Hinds, 136 Wash. 352, 240 P. 6.

If we assume, as the appellant contends, that the thirty-day notice of default served by him upon the vendees ipso facto terminated the contract it is nevertheless clear that if the vendor invokes the affirmative action of a court of equity to declare the forfeiture, that court will so far recognize the rights of the vendees as to declare a forfeiture only when the vendees have been given a reasonable opportunity to pay the amounts in default and thus avoid the forfeiture, and have failed to do so. Great Western Ins. Co. v. Anderson, supra.

The bankruptcy court, by reason of the fact that the farm debtors have possession of the real and personal property covered by the contract has exclusive jurisdiction to determine the rights of the parties therein. Bankruptcy Act, § 75, subs. n, *o*(2), 11 U.S.C.A. § 203, subs. n, *o*(2), supra; Ex parte Baldwin, 291 U.S. 610, 615, 616, 54 S.Ct. 551, 78 L.Ed. 1020; Thompson v. Magnolia Co., 309 U.S. 478, 60 S.Ct. 628, 84 L.Ed. 876. Section 75, sub. n, supra, of the Bankruptcy Act expressly provides that contracts for purchase, or conditional sales contracts, shall be under the exclusive jurisdiction of the bankruptcy court. Bankruptcy Act § 75, sub. n, 11 U.S.C.A. § 203, sub. n, supra. When the appellant vendor invoked the jurisdiction of the bankruptcy court to ad-

[1] "Should the purchaser fail to make the payments or to keep and perform any of the covenants and agreements herein mentioned, the same shall constitute a forfeiture of this agreement and thereupon the vendors, at his option, may declare such forfeiture by written notice to the purchaser, and at the expiration of thirty days, the terms of this agreement meanwhile not having been complied with the vendors may enter into said premises and take possession of them, and this agreement shall be at an end and null and void, and the purchaser shall forfeit to the vendors as liquidated damages all payments made hereunder, and immediately surrender possession of said premises, but the failure of the vendors to declare a forfeiture at any time upon violation of any of the terms of this contract by the purchaser shall be deemed only an indulgence by the vendors for the particular time and shall not be construed to be a waiver of any rights of the vendors specified herein."

judge his right to the property by reason of a forfeiture, he invoked the powers of a court exercising the powers of a court of equity. Bankruptcy courts are administered in acordance with equitable principles. Local Loan Co. v. Hunt, 292 U. S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230, 93 A.L.R. 195.

It is therefore clear that as under the law of the state of Washington a court of equity has power to reestablish the conditional sales contract upon condition that the amounts in default be paid within a reasonable time, it would follow that the bankruptcy court could do so. The bankruptcy court in the order appealed from did not attempt to declare, limit or define the rights of the bankrupts in the farm land purchased and occupied by them. It should have done so, but can do so later.

Section 75, sub. s, of the Bankruptcy Act, 11 U.S.C.A. § 203, sub. s, supra, expressly regulates the action of the bankruptcy court in cases where the court has jurisdiction and does not leave the matter to the discretion of the court except as expressly provided. Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222; John Hancock Mutual Life Ins. Co. v. Bartels, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176. The bankruptcy court having jurisdiction over the contract of purchase herein and over the property in the possession of the farm debtors, it matters not that the state courts, under the state law, would in the exercise of sound judicial discretion fix other terms and conditions as a basis for recognition of the farm debtor's rights. This is clearly implied in the decisions upholding the right of a bankruptcy court to proceed under the act notwithstanding that the time to redeem under state law from a foreclosure sale has expired after the proceedings under § 75, sub. s have been initiated. Wright v. Union Central Life Ins. Co., 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490.

In order to pass upon the other questions raised by the parties it will be necessary to state additional facts.

While the bankrupts were in default for the nonpayment of principal, interest and taxes, the vendor served a notice which is claimed by appellant to declare a present forfeiture and, on the other hand, is claimed by the appellees merely to be a notice of intention to declare forfeiture after thirty days. Had it been the former it is conceded that at the expiration of thirty days the rights of the vendees would be forfeited. If, on the other hand, it was a notice of intention to declare forfeiture at the end of thirty days then, until such a declaration, the contract would not be terminated. We set out the notice in the footnote.[2]

[2] "Notice of intention to declare a forfeiture of and cancel sale agreement.

"Spokane, Washington,
"July 24, 1940.

"To William J. Gunning and Opal Gunning
"Chewelah, Washington.

"You are hereby notified that unless the payments now in default under the terms of the sale agreement and contract hereinafter referred to be made on or before August 24, 1940, the undersigned, legal owner of the real property described in said contract, will elect to declare a forfeiture and cancel the said contract and that upon such election being made, all of your rights under said contract will cease and determine and that all payments heretofore made thereunder will be retained by the undersigned in liquidation of damages sustained by reason of your default, and you will forthwith be required to surrender possession of the premises in said contract described.

"The contract herein referred to was executed in writing under date of September 29, 1938 by J. W. Neely, the un-

dersigned, as vendor, providing for the sale to William J. Gunning and Opal Gunning, husband and wife, vendees, of the following described real property situated in Stevens County, State of Washington, to-wit:

"The southeast quarter of Section Nine (9); the east half (E ½) of the southwest quarter (SW ¼) of section nine (9); the southeast quarter (SE ¼) of the northeast quarter (NE ¼) of section nine (9), except railroad; the southwest quarter (SW ¼) of section ten (10), the south half (S ½) of the southeast quarter (SE ¼) of section ten (10); also all that part of the north half (N ½) of the southeast quarter (SE ¼) and the south half (S ½) of the northwest quarter (NW ¼) of section ten (10), lying south of the right of way of the Great Northern Railway Company, there being in said fractional tracts about seventy-five acres, more or less; also all of the northeast quarter (NE ¼) of the northeast quarter (NE ¼) of section nine (9), lying south of the right of way of the Great Northern Railway Co., there being in said fractional tract about fifteen (15)

We agree with the appellees that the notice does not purport to declare forfeiture but only an intention so to do at the end of thirty days if payments are not made before that time. It did not amount to a declaration that at the end of thirty days the rights of the vendees would be forfeited. It could not be held to result in immediate, complete forfeiture, because the contract allowed a thirty-day period during which the vendee would have the opportunity to make the payment in default. Twenty days after the service of thirty-day notice the vendees instituted an action in a state court to rescind the contract on the ground that the vendor had made certain fraudulent misrepresentations to secure the consent of the vendees to the contract. The vendor filed an answer in the state court denying fraud, setting up laches and acquiescence, and asking, in a cross-complaint, that the court declare the rights of the vendees in and to the property sold to be forfeited because of the nonpayment of the sums in default. After trial in the state court the court announced its conclusion adverse to the vendees but it postponed the entering of findings and decree to that effect, avowedly for the purpose of giving the vendees an opportunity to realize something from the property. The case was continued for thirty-one days and, later, a further extension for twenty-one days was granted, but the farm debtors, instead of complying with the contract during that period, filed this proceeding in the bankruptcy court before the time thus extended had expired. It is of course conceded that the oral declaration of court did not determine the litigation in the state court in favor of either party. However, it is contended that the allegations of the pleadings in the state court and the declaration of court therein should be considered in determining whether or not there was any right remaining in the farm debtors at the time the petition of the farmer debtors was filed in the bankruptcy court which can be dealt with in such court.

We have upheld the contention of the appellees that the notice given by the vendor did not terminate their rights thirty days thereafter, but there remains to consider the vendor's alternative claim that his affirmative defense in the state court demanding a decree of forfeiture was the equivalent of a declaration after thirty days of an immediate forfeiture. We do not think that the affirmative defense of the vendor praying for a judgment of forfeiture should be held to be the equivalent of a formal declaration of forfeiture. The cross-complaint was based upon the claim that a forfeiture had already occurred and, in any event, the right of forfeiture was subject to the power of the court to extend the period within which the vendees could make the payments in

---

acres more or less; also that portion of the southwest quarter (SW ¼) of the northeast quarter (NE ¼) of section ten (10), all of the foregoing lands being all of the lands owned in said county by said first party, and all being in township thirty-two (32) north, range forty (40), E. W.M., Stevens County, Washington.

"That the balance due upon said contract as of this date, which represents the vendor's equity over and above mortgages assumed by the vendees is $14,590.-34 and interest. That the payments which are in default are as follows: $2500.00 from the net proceeds of the 1938 crops grown upon said land; $1000.-00 from the net proceeds of the 1939 crops grown upon said land, and $1500.00 payable on November 1st, 1939, all of which you have neglected to pay, except for the sum of $300.00 paid on or about November 1st, 1939, and applied upon the interest due under said contract from November 1st, 1938.

"That in addition thereto, you have failed to keep and perform other covenants and agreements in said contract as follows: Taxes for the year 1939 are delinquent and unpaid; have failed and neglected to make the payments due under the Federal Land Bank mortgage and Commissioner's mortgage mentioned in said contract; by selling or disposing of, without applying the proceeds to vendor's interest or of replacing the same with property of equal value, numerous pieces of farm machinery and other personal property including horses, hogs and cattle, contrary to the provisions of said contract.

"You and each of you are further hereby notified that you are not to sell, encumber, remove or otherwise dispose of any of the personal property, including livestock, machinery, farm equipment, crops growing or severed from the land, or any other property now in or upon the above described real estate during the pendency of this notice of forfeiture.

"J. W. Neely, Vendor.

"Robertson & Smith,

"Attorneys for Vendor.

"708 Spokane and Eastern Bldg.,

"Spokane, Washington."

default and thus restore the contract. Great Western Inv. Co. v. Anderson, 162 Wash. 58, 297 P. 1087; Zane v. Hinds, 136 Wash. 352, 240 P. 6, supra.

### Suit to Rescind.

The appellant claims that by the institution of the action to rescind the contract after the notice of July 24, 1940, the appellees virtually terminated the contract.

The claim would seem to be that where the vendor had served notice of proposed forfeiture for noncompliance with the contract, thus indicating an intent to terminate the contract, and the purchaser, instead of making payments demanded in the notice brings an action to rescind the contract for fraud, thus indicating his desire to terminate the contract, there is a rescission by mutual consent. This position cannot be maintained. The fact is that neither party had consented to such a termination of the contract. It is true that the vendees were seeking to be relieved of the contract on the ground that it was procured by fraud and it was therefore voidable, but the vendor was standing on the contract seeking to enforce it in order that he might retain the payments already made thereunder and exercise the power of forfeiture therein contained.

Under such circumstances, where the court concludes that the contract was not procured by fraud or, if so, that by reason of laches or the statute of limitations, the vendee is not entitled to relief, the court must proceed to determine the rights of the parties under the contract and one of those rights, as held by the Supreme Court of the State of Washington, even after a duly declared forfeiture is to have reasonable additional time to make payments in default where, in the discretion of such court, it is held that a reasonable period should be so allowed, as above stated.

The cases cited by the appellant (Myers v. Calhoun, Denny & Ewing, 85 Wash. 689, 149 P. 19; and Blake v. Merritt, 101 Wash. 56, 171 P. 1013, 1014) in support of his proposition above stated fall far short of supporting such conclusion. The case of Myers v. Calhoun, Denny & Ewing, supra, is an action to secure rescission of a contract for the sale of real estate upon the ground of fraud. The case of Blake v. Merritt, supra, was an action based upon a rescission of such a contract. In both cases it was held that the purchaser was not in a position to insist that the vendor by accepting delayed payment had waived delay as to future payments where the provisions of the contract make time the essence thereof and require prompt payment in accordance with the terms of the contract. These cases did not deal with the right of the court to allow such a vendee a reasonable time to pay moneys after default and notice and thus avoid a forfeiture. Indeed that such right remained is assumed in Blake v. Merritt, supra, where the Supreme Court of Washington directed that the vendee have 60 days after the filing of remittitur in the lower court "to comply with the judgment of the superior court covering the matter of forfeiture."

In view of our conclusion it is unnecessary to consider other points advanced by the appellees in support of the order of the lower court.

We conclude that, at the time the farm debtors filed their petition herein for composition and extension, under the law of Washington a court of equity still had power, in an action to enforce a forfeiture of the contract of sale, to order the reinstatement of the contract upon condition that the vendees make the payments in default; that the bankruptcy court, in view of its exclusive jurisdiction over property of the farm debtors, including contracts for the purchase and sale of lands, acquired jurisdiction to permit such restoration of the contract; that the federal court, in reinstating the contract, was not bound to follow the equitable principles evolved in the state court; that Congress, in providing for the administration of property of the farm debtors, including contracts for the purchase and sale of property, whether conditional or unconditional, fixed the equitable terms which the bankruptcy court must apply in determining the rights of the parties, (11 U. S.C.A. § 203, sub. s, Bankruptcy Act § 75, sub. s, supra,) notwithstanding the fact that these terms were more liberal than those which had theretofore been applied in the state courts under similar conditions.

Order affirmed.

HEALY, Circuit Judge (concurring).

I concur in the result of this opinion.

HANEY, Circuit Judge (dissenting).

The majority opinion is written on the basis of a holding that the contract of sale had not been forfeited when relief

in bankruptcy was sought, and therefore passed under the exclusive jurisdiction of the bankruptcy court pursuant to 11 U.S. C.A. § 203, sub. n. That section places under the jurisdiction of the bankruptcy court "all real or personal property, * * * including among others, contracts for purchase, contracts for deed, or conditional sales contracts * * *."

Appellees insist, and the majority holds, that when the bankruptcy proceedings were commenced, they were the owners of real or personal property, including the contract for purchase or conditional sales contract, or an equity or right in such property. If the contract of sale was forfeited prior to commencement of the bankruptcy proceedings, then the contract was no longer in existence, and appellees owned no real or personal property therein. Whether they owned any other right in the contract will be hereafter discussed. Appellees do not contend that they owned anything, except possibly by inference a right to be relieved of the forfeiture, if the contract of sale actually was forfeited prior to commencement of the bankruptcy proceedings. What they contend is that no forfeiture occurred. Therefore, we must first determine whether there was or was not a forfeiture prior to commencement of the bankruptcy proceedings.

First. It is conceded that the law of Washington is to be applied in determining what rights appellees had under the contract of sale. Notwithstanding such concession, and Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the majority do not discuss or apply Washington law as to what is sufficient to constitute a forfeiture.

Second. The majority, with no reference to Washington law, assert that "the notice does not purport to declare forfeiture but only an intention so to do at the end of thirty days if payments are not made before that time. It did not amount to a declaration that at the end of thirty days the rights of the vendees would be forfeited. It could not be held to result in immediate, complete forfeiture, because the contract allowed a thirty-day period during which the vendee would have the opportunity to make the payment in default". No one contends here that there was an immediate forfeiture upon giving the notice.

The contract of sale provided in part: "Should the purchaser fail to make the payments * * * the same shall constitute a forfeiture of this agreement and thereupon the vendors, at his option, may declare such forfeiture by written notice to the purchaser, and at the expiration of thirty days, the terms of this agreement meanwhile not having been complied with, the vendors may enter into said premises and take possession of them * * *."

The notice of appellant stated in part: "* * * that unless the payments now in default under the terms of the sale agreement and contract hereinafter referred to be made on or before August 24, 1940, the undersigned * * * will elect to declare a forfeiture and cancel the said contract and that upon such election being made, all of your rights under said contract will cease and determine * * * and you will forthwith be required to surrender possession of the premises in said contract described."

The notice concluded with the following statement in part: "You and each of you are further hereby notified that you are not to sell, encumber, remove or otherwise dispose of any of the personal property * * * during the pendency of this notice of forfeiture."

It is said in Harris v. Seattle Land & Imp. Co., 122 Wash. 323, 211 P. 282, 284, 214 P. 1066: "No special form of notice is necessary, provided the defaulting purchaser is fairly apprised of the intention of the seller to claim default and is no longer lulled into security by failure of the seller to act". Certainly, the notice here meets that test. While it is true that a simple demand for past due payments is not notice of forfeiture (Shaw v. Morrison, 145 Wash. 420, 260 P. 666), the notice here went much further. Appellees could not be misled because the notice demanded immediate possession of the property at the end of the thirty day period, something which could not be done under the terms of the contract until the vendors had declared "such forfeiture". Appellees therefore knew that since possession was demanded at the expiration of 30 days, the notice must have been a notice of forfeiture.

Furthermore, notices of the kind given here have been held sufficient in Sleeper v. Bragdon, 45 Wash. 562, 88 P. 1036 and Bedtelyon v. Otis Orchards Co., 106 Wash. 151, 179 P. 96. In the first mentioned case [45 Wash. 562, 88 P. 1037], the court said

that the notice given was "that, unless the payment was made on the last-named day, the contract would be canceled on that day" and held that the vendee " * * * was thus notified in advance that the respondents had already elected and declared that the contract should be canceled on January 10th, unless she made the payment on that day or before. *She therefore knew that, by her own act in defaulting, the cancellation was completed, and she was not entitled to any further notice * * *."* (Italics supplied) In the second case the vendor advised the vendee "that you surrender your contract to us and we will return your notes unless you are in position to take care of your past-due payments without any further delay. We cannot allow this matter to run over thirty days from date of this letter" [106 Wash. 151, 179 P. 98]. The court held that "rescission of the contract took place at the end of thirty days". See also: Harris v. Seattle Land & Imp. Co., supra; Reese v. Westfield, 56 Wash. 415, 417, 105 P. 837, 28 L.R.A.,N.S., 956; Nagel v. Edmonston, 178 Wash. 577, 35 P.2d 64.

The majority make no attempt to distinguish these cases. They are pertinent and, I think, controlling. Erie Railroad v. Tompkins, supra, requires their application here regardless of whether we agree or disagree with the reasoning or result thereof.

Finally, the holding of the majority on this point confuses rather than clarifies the law. The only purpose of the notice is to enable the vendee to remedy his default. A further notice at the end of 30 days that the vendee had lost his rights serves no purpose whatever. It avails the vendee nothing to be told a fact of which he is already aware. The notice was couched in future language, undoubtedly to avoid liability as specified in Finch v. Sprague, 117 Wash. 650, 202 P. 257. Since non-payment of an amount due is sufficient ground for forfeiture (Sisson v. Durrant, 152 Wash. 382, 278 P. 174), and since the notice informed the vendees that possession was demanded at the end of 30 days, they knew the contract provision was being invoked. That was sufficient, and the vendees were "not entitled to any further notice". Sleeper v. Bragdon, supra.

Third. The notice being sufficient it remains to be determined whether appellees had any rights after the 30 day period

mentioned in the notice. They had no rights in the property, and the contract of sale had terminated at the end of such period, unless they had a right to invoke the aid of a court of equity to relieve against the forfeiture, a subject of equity jurisdiction. That under Washington law, a court of equity may allow a vendee sufficient time within which to remedy his default, is not doubted. Wallis v. Elliott, 154 Wash. 625, 282 P. 928; Great Western Investment Co. v. Anderson, 162 Wash. 58, 297 P. 1087; Grosgebauer v. Schneider, 177 Wash. 282, 285, 31 P.2d 901. The question here, however, is whether the vendees had a right to obtain relief. On that question, it is said in 21 C.J. 34, § 12: "The decree of a chancellor is always a matter of grace and never the absolute right of a litigant. The propriety of affording equitable relief rests in the sound discretion of the court, to be exercised according to the circumstances and exigencies of each particular case. Of course this discretion is not an arbitrary one, but must be exercised in accordance with the fixed principles of equity jurisprudence. Under some circumstances, judicial discretion to grant relief becomes judicial duty to grant it. The grace which equity should bestow then becomes matter of right * * *" Here appellees point to no showing entitling them to the discretionary relief of the court. No such showing was made. Not having made such a showing, appellees had no absolute right to relief. In fact the state court at no time indicated that such showing had been made. Appellees therefore had no rights at all which came under the jurisdiction of the court below.

Fourth. Appellees brought suit in the state court to rescind the contract of sale because of fraud. Appellant filed an answer and cross-complaint alleging that he "caused to be served personally upon the plaintiffs * * * a notice of forfeiture of said sales agreement, copy of which notice of forfeiture is attached hereto * * *" He prayed that the "contract between the parties be cancelled, held to be at an end and null and void * * *" The prayer is not inconsistent with the holding that there was a forfeiture. See Sleeper v. Bragdon, 45 Wash. 562, 88 P. 1036, where the same sort of prayer was involved.

The order should be reversed.