J. R. Watkins Medical Company, appellee, v. S. M. Hunt, defendant: Frank Campbell, appellant.

Filed March 13, 1920.   No. 20783.

1. **Physicians and Surgeons:** Itinerant Vendor: Misdemeanor. Section 2726, Rev. St. 1913, quoted in the opinion, construed, and *held,* that to constitute the offense described the accused, an itinerant vendor, must "publicly profess to cure or treat diseases," etc.

2. **Monopolies:** Act Limiting Sales. Interpreted as a law to limit the sale of patent and proprietary medicines to pharmacists, such section would be unconstitutional as attempting to create a monopoly, and not necessary for public health or safety.

3. **Commerce:** Sales: Partnership. A nonresident corporation entered into a written contract with a resident of this state for the sale of its products (medicines, extracts, and other articles), to be delivered f. o. b. at a point outside of the state, and to be shipped into this state and here resold at retail by the purchaser, as an itinerant vendor, within certain designated territory. The corporation was to incur no expense for receiving, storing or selling the goods, and it was not to share in the profits of the business,

but did agree to credit purchaser with the purchase price of unsold goods. *Held*, that this agreement did not constitute a partnership or agency; *held*, that it was not void as against public policy because violative of a criminal statute relating to itinerant vending of drugs; and *held*, further, that such transaction constitutes interstate commerce, which cannot be affected by any local statute of this state regulating the disposition of goods so sold, so as to deprive the foreign corporation of the right to sue for balance due for such goods.

4. **Principal and Surety**: CONSIDERATION: EXTENSION OF TIME. Where a contract of guaranty recited the consideration of $1 paid the guarantors, and a part of the consideration was an extension of time on a balance due by the principal under a former contract, there was sufficient consideration to support the contract of guaranty.

5. ———: DELIVERY OF BOND. "In the absence of evidence to the contrary, it will be presumed that the delivery of a bond was unconditional." *Gyger v. Courtney*, 59 Neb. 555.

6. ———: BREACH OF OBLIGATION: RECOVERY. A surety, for a sufficient consideration, undertook that his principal would pay a certain prior indebtedness at a time specified. The amount of the obligee's recovery from the surety for a breach of the written contract is the amount of the indebtedness which the principal has failed to pay in accordance with its terms. The fact that it was a prior indebtedness, and that the principal was insolvent can make no difference in the amount of recovery, even though the surety signs upon a condition, not complied with, of which condition the obligee had no notice.

APPEAL from the district court for Webster county: WILLIAM C. DORSEY, JUDGE. *Affirmed.*

*Bernard McNeny*, for appellant.

*L. H. Blackledge* and *Tawney, Smith & Tawney*, contra.

CORNISH, J.

The defendant Frank Campbell (appellant) denies liability as surety, upon two grounds: First, that the contract is void as against public policy; second, that he signed as surety upon condition, not complied with, that one Charles Fuller would also sign.

The case is before us solely upon the pleadings, findings and judgment of the trial court, without bill of exceptions.

It appears that at the time of entering into the contract sued upon the defendant Hunt had become indebted to the plaintiff in the sum of $666.83, for certain goods and merchandise, consisting of medicines, extracts, and other articles manufactured by plaintiff, the exact character of which is not shown. It was agreed that the time of payment of the amount due should be extended; that defendant Hunt should have the exclusive right to sell the goods of plaintiff in a particular territory; that he should devote his time thereto and visit farm houses as often as three times a year; that he would purchase the goods of the plaintiff at Winona, Minnesota, pay the freight, and conduct the business at his own cost and expense, the plaintiff having no share in the profits, but agreeing to give him credit for unsold goods shipped and delivered by Hunt to plaintiff at Winona.

Appellant contends that the contract is void as against public policy. The contention is based upon section 2726, Rev. St. 1913, which reads as follows: "Any itinerant vendor of any drug, nostrum, ointment, or appliance of any kind intended for the treatment of any disease or injury, or who shall by writing, printing, or any other method, publicly profess to cure or treat diseases or injury, or deformity, by any drug, nostrum, manipulation, or other expedient, shall be deemed guilty of a misdemeanor," etc. It is argued that this section describes two classes of offenses, one for vending and another for publicly professing to cure. We question this construction. The wrongdoer must "profess to cure," etc.

The word "or" in the third line of the section renders construction difficult. The word "vendor" appears to be the subject of the sentence. If the language before the word "or" is interpreted to include all vending or itinerant vending of drugs, etc., then the qualifying

phrase following the word "or" would seem to be super-fluous, because the word "who" must refer to "itinerant vendor of any drug," etc. It would seem difficult or impossible to make the section read as if it commenced as follows: "Any person who is an itinerant vendor of drugs," etc.

The title of the act and its contents show that it was not intended to deal with patent and proprietary medicines, but merely to "regulate the practice of medicine." This subject is dealt with at section 2735, Rev. St. 1913, where the right of wholesale or retail dealers to sell patent or proprietary medicines is reserved.

Another reason for such interpretation would be that a law, attempting to limit the sale of patent and proprietary medicines to pharmacists, would be a law tending to create a monopoly not necessary for public health or safety, and therefore unconstitutional and void. *People v. Wilson,* 249 Ill. 195.

Every presumption is indulged in favor of the findings of the trial court and in support of the judgment rendered. Besides making certain special findings, the court found generally in favor of the plaintiff. While the record before us shows that the contract in part contemplated the itinerant vending of medicines, and the answer of defendant Campbell alleges such vending, the allegations of the answer are denied in the reply. The court's findings do not show such vending, or that defendant Hunt ever professed to cure diseases in any way, or that such profession was contemplated by the contract. As stated in plaintiff's brief, for all the record shows affirmatively, the medicines referred to in the contract might have been for animals, not men; or sales may have consisted of "extracts, or other articles."

The defense is not available for other reasons. The plaintiff, to make his case, did not need to show either sales of medicine to Hunt or that Hunt sold medicines at retail. The record shows affirmatively that the indebtedness sued for was indebtedness arising from previous

sales of goods of plaintiff to Hunt under a previous contract. What that contract was, or whether it contemplated itinerant vending, is not shown. It had been fully executed, and the balance due agreed upon and evidenced by a note. Defendant Campbell, as surety, guaranteed the payment of this indebtedness.

We recently held in *In re Estate of Lowe, ante,* p. 147: "When plaintiff can maintain his cause of action without the aid of an illegal act or one that might be construed as *contra bonos mores,* he will be allowed to recover." The plaintiff is not seeking to enforce the terms of the contract challenged by appellant as against public policy. Conceding that the law prohibited any act, there is nothing in the record to show that plaintiff or defendant Hunt performed such prohibited act. The general finding for plaintiff must be held to indicate the contrary. The appellant ought not to be permitted to shelter himself behind the provisions of the statute inhibiting certain provisions of the contract, which provision the plaintiff is not seeking to enforce. Common honesty forbids it. *McCall Co. v. Hughes,* 102 Miss. 375, 42 L. R. A. n. s. 63.

Again, the agreement to sell to defendant Hunt goods f. o. b. cars at Winona relates to interstate commerce and cannot be affected by the local statutes of this state. The contract under consideration was for the sale of goods to Hunt and did not create an agency. The plaintiff had no warehouse, office or place of business in this state. It did not pay expenses of receiving, handling, storing or selling goods. It was not a partner in the business, nor did it share in the profits. If we were to interpret section 2726, above quoted, as one regulating the sale of patent and proprietary medicines, it could not have extra territorial effect. The defendant, having purchased the goods, would be required to pay for them, no matter what the laws of Nebraska might be, touching his manner of disposition of them. *Menke v. State,* 70 Neb. 669; *Dr. Koch Vegetable Tea Co. v. Malone,* 163 S. W. (Tex. Civ. App.) 662; *Watkins Medical Co. v. Hollo-*

*way,* 181 S. W. (Mo. App.) 602; *Watkins Medical Co. v. Coombes,* 166 Pac. (Okla.) 1072; *Butler Bros. Shoe Co. v. United States Rubber Co.,* 156 Fed. 1.

Appellant also contends, and the trial court found, that he signed the contract in suit as surety upon condition that one Fuller should also sign before its delivery, which condition was not complied with. The trial court found that there was no evidence that plaintiff, prior to the delivery of the bond, had notice of such condition, and further found, as a matter of law, that the bond was delivered to and accepted by plaintiff in good faith.

The rule appears to be that, "In the absence of evidence to the contrary, it will be presumed that the delivery of a bond was unconditional." *Gyger v. Courtney,* 59 Neb. 555. The surety trusts the principal. If there is anything upon the face of the bond which would suggest inquiry to the ordinarily prudent man, the rule is otherwise. *Middleboro Nat. Bank v. Richards,* 55 Neb. 682; *Galbraith v. Shores-Mueller Co.,* 178 Ky. 688; *Watkins Medical Co. v. Hogue,* 210 S. W. (Ark.) 628; Pingrey, Suretyship and Guaranty (2d ed.) sec. 51; Stearns, Suretyship (2d ed.) sec. 108.

It is urged by appellant that in procuring the bond defendant Hunt acted as the agent of the plaintiff, who is therefore charged with notice. As before stated, we are of opinion that defendant Hunt never became the agent of plaintiff. Regardless of that question, however, an agent in procuring a bond, covering good faith or liability to his principal, is, in the nature of the case, not acting for the principal. He is the principal in that transaction. The bond is antecedent to and a condition of his agency. Their interests are not identical. See *Galbraith v. Shores-Mueller Co., supra.*

It is further urged that, inasmuch as the record shows that the indebtedness, payment for which was guaranteed, was a past indebtedness, and that at the time defendant Campbell signed as surety Hunt was insolvent, there can be no liability against Campbell, because plain-

tiff has not been damaged. It is said that Campbell's liability is based upon estoppel, he being estopped to deny the validity of the contract only because the plaintiff did not have notice of the condition upon which he signed it; that as between two innocent persons (plaintiff and Campbell) recovery should, in justice, be limited to actual damages suffered.

This argument assumes the validity of the contract. It does not attempt to deny that it was based upon a good and sufficient consideration. It did have a good consideration, to wit, the entering into a new contract, extension of time of payment, and payment of one dollar. Being a valid and binding contract, we think that the damage which plaintiff sustained from a breach of it is the amount of loss sustained from Campbell's failure to keep his promise that if Hunt did not pay the indebtedness he would. This necessarily follows if we are to consider Campbell's promises as binding upon him. When there is taken out of a contract of surety its undertaking against loss from insolvency, there may be little, if anything, left. The rule contended for would apply with much force to the case of a promissory note, without consideration or obtained by fraud, in the hands of an innocent purchaser. Equity might say, in such case, that the innocent holder's recovery should be limited to the amount paid and interest. Contrary to equity (in the opinion of the writer), the courts have generally held that the innocent holder can recover the face value of the note. In the instant case, there is no way that the promisee can be saved from damage except as the promisor keeps the promise that he has made, for which promise the promisee (without fault) has paid a consideration. There is no reason in law why a surety may not undertake that an insolvent will pay his debts as well as one who is solvent. Hunt did pay on the $666.83 indebtedness so as to reduce it to $384.88.

We are of opinion that the judgment appealed from should be

AFFIRMED.

LETTON and DAY, JJ., not sitting.

ROSE, J., dissenting.

I dissent from the adoption of that part of the syllabus and the opinion relating to monopoly and interstate commerce. These matters are not necessary to a decision. Parties to future litigation should not be prejudiced in advance by these unnecessary rulings. The court in the future should not be embarrassed by them in determining issues between parties who have not had an opportunity to present their views thereon. The state should not be put to the expense of publishing dicta.