[No. 20746.    Department Two.    November 15, 1927.]

## W. T. RAWLEIGH COMPANY, *Appellant*, v. FRED H. LANGELAND, *as Administrator, et al., Respondents.*[1]

[1] CONTRACTS (1, 24)—REQUISITES—EXECUTED AND EXECUTORY CONTRACTS—MUTUALITY. Lack of a binding mutuality, in a contract by which one was to sell and the other to buy goods, cannot be urged after the contract has been completely executed.

[2] GUARANTY (9)—CONSTRUCTION—SCOPE AND EXTENT OF LIABILITY —EXTENSION OF CREDIT—PAST INDEBTEDNESS. A guaranty to pay a past indebtedness of another, and all future indebtedness incurred by him under a certain contract, is not without consideration as to the past indebtedness because of the insolvency of such other person at the time; nor is it discharged by payments on the indebtedness subsequently incurred, in an amount equal to the past indebtedness.

[3] SAME (9). In such a case, the courts are not concerned with the amounts of either the past or future indebtedness within the terms of the contract made by the parties, and it cannot be claimed that the amount of future credits should be substantial before liability on the past indebtedness.

[4] SAME (16) — EVIDENCE — ADMISSIBILITY. In an action upon a guaranty of indebtedness "as shown by the books of the company," it is error to refuse to admit the books in evidence.

Appeal from a judgment of the superior court for Kitsap county, French, J., entered January 3, 1927, upon the verdict of a jury rendered in favor of the defendants, in an action on contract. Reversed.

*Francis M. Applegate,* for appellant.

*Marion Garland* and *Shorett, McLaren & Shorett,* for respondents.

[1]Reported in 261 Pac. 93.

ASKREN, J.—Plaintiff brought this action to recover on a contract of guaranty. From a jury's verdict in favor of the defendant, and judgment entered thereon, the plaintiff appeals.

The evidence discloses that the appellant is engaged in manufacturing products and that, in the latter part of 1923, it entered into a renewal contract with one A. A. Larsen, who was engaged in the business of disposing of its products in the state. In order to secure this renewal contract, it was necessary for Larsen to secure the signatures of two responsible persons guaranteeing the then indebtedness, and that to arise in the future. The contract between Larsen and appellant need not be set out. The guaranty contract was as follows:

"For and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby expressly confessed and acknowledged, or in consideration of the above named Seller extending further credit to the said Buyer, we the undersigned do hereby jointly and severally guarantee unto said W. T. Rawleigh Company, the above named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein, and to all of the terms, provisions and agreements contained in said instruments we fully assent and agree, hereby waiving notice of acceptance by the seller, of this contract of guaranty, and all notice of any nature whatsoever, and agree that the written acknowledgment, by said buyer of the amount due or owing on his account, or that any judgment rendered against him for moneys due the seller, shall in every and all respects bind and be conclusive, jointly or severally, against

the undersigned. And we further agree that in any suit brought on this contract of guaranty by the seller no other or further proof shall be required of it than to establish the amount or sum of money due and owing to it from the said buyer, and when so proven, shall be conclusive and binding upon the undersigned, and further that it shall not be necessary for said seller in order to enforce this contract of guaranty to first institute suit against said buyer nor exhaust its legal remedies against him. And agree that any extention of the time of payment or payments to said buyer shall not release us from liability under this contract of guaranty.

"It is hereby mutually understood, and agreed that this contract of guaranty is conclusive and binding on the party or parties who sign it, whether the same is signed by any other party or parties or not, and that any statement or representation made by any person as to the undertakings of the guarantor or guarantors other than as herein expressed, or as to who or how many parties are to sign this guaranty, shall in no wise affect the rights of the company; and it is mutually understood that this is to be a continuing guaranty; and any notice in any way affecting the responsibility or liability of the signers hereunto in order to become effective and binding upon the above named seller, shall be reduced to writing and delivered by registered mail to the office of said seller in Oakland, California.

(50c Rev. Stp.)

Affix hereto 50c War Tax Stamp.

RESPONSIBLE MEN SIGN THIS CONTRACT OF GUARANTY BELOW.

(Names)        (Occupation)        (P. O. Addresses)
Ole Hauan (Seal)        Farmer        Kingston, Wash.
L. S. Langeland (Seal) Merchant        Poulsbo, Wash.

"The above guarantors are entitled upon request at any time to a statement of buyer's account."

At the time of making the contract of guaranty, Larsen was indebted to appellant in the sum of

$1,569.42. From that time until February 1, 1925, there was sold to Larsen additional goods amounting to $789.80. During that time he paid on account the sum of $789.93, leaving a balance due of $1,569.29, for which suit was brought on the guaranty contract.

Upon the trial, the court ruled out all testimony as to the prior indebtedness, holding, as a matter of law, that no recovery could be had on it. The court was moved to make this ruling by the insistence of respondents' counsel that there was no consideration for the guaranty as to past indebtedness, and that the guarantors could only be held for whatever damages the appellant sustained by reason of goods sold thereafter.

[1] The argument made in this court that there was no consideration for the past indebtedness revolved around the claim that, under the contract between Larsen and the appellant, there was no binding agreement upon the appellant to sell goods to him.

It is unnecessary here to construe the contract to determine whether it requires the one to sell and the other to buy, for both parties treated it as such, and goods were sold by appellant and bought by Larsen making it a completely executed contract so that any want of mutuality cannot now be urged. 13 C. J., 334; *Gerard v. Seattle,* 73 Wash. 519, 132 Pac. 227; *Burke & Farrar v. Campbell,* 128 Wash. 646, 224 Pac. 9. See, also, *Rawleigh Co. v. Walker,* 117 Okl. 256, 246 Pac. 417, and *Gordon v. Rawleigh Co.,* 117 Okl. 235, 245 Pac. 825.

[2] Respondents claim that appellant's recovery must be limited to the damages sustained, is equally unsound. It is argued that since, after the guaranty was signed, Larsen bought only $789.80 worth of goods and during the same time made payments of $789.93,

that he had therefore paid thirteen cents more than his account amounted to during that time, and no damage resulted to the appellant. However, the contract of guaranty is not thus limited. The rule is well stated in 28 C. J., 963:

"Amount of Liability or Measure of Damages—a. In General. The amount of a guarantor's liability is controlled by the terms of the contract of guaranty, as construed by the general rules of construction; and where the terms have been ascertained, the contract will be strictly construed for the purpose of confining the amount of the liability of the guarantor to the precise terms. If the contract of guaranty specifies no limit as to the amount of the guarantor's liability the amount, or in other words the measure of damages, for which he is responsible upon a default upon the part of the principal obligor is the amount of loss which the guarantee has sustained by reason of such default, and this usually is measured by the amount of the principal's liability to the guarantee at the time of the default, with interest thereon, and it is not limited to the consideration received by the guarantor for the guaranty. . . . "

A like claim was made in the case of *Watkins Medical Co. v. Hunt,* 104 Neb. 266, 177 N. W. 462, where a guaranty similar in nature was attacked. Said the court:

"It is further urged that, inasmuch as the record shows that the indebtedness, payment for which was guaranteed, was a past indebtedness, and that at the time defendant Campbell signed as surety Hunt was insolvent, there can be no liability against Campbell, because plaintiff has not been damaged. It is said that Campbell's liability is based upon estoppel, he being estopped to deny the validity of the contract only, because the plaintiff did not have notice of the condition upon which he signed it; that as between two innocent persons (plaintiff and Campbell) recovery should, in justice, be limited to actual damages suffered.

"This argument assumes the validity of the contract. It does attempt to deny that it was based upon a good and sufficient consideration. It did have a good consideration, to wit, the entering into a new contract, extension of time of payment, and payment of $1. Being a valid and binding contract, we think that the damage which plaintiff sustained from breach of it is the amount of loss sustained from Campbell's failure to keep his promise that if Hunt did not pay the indebtedness he would. This necessarily follows if we are to consider Campbell's promises as binding upon him. When there is taken out of the contract of surety its undertaking against loss from insolvency, there may be little, if anything, left. . . . There is no reason in law why a surety may not undertake that an insolvent will pay his debts as well as one who is solvent. Hunt did pay on the $666.83 indebtedness so as to reduce it to $384.88.''

Some reliance is had by respondents on our decision in *Noyes v. Adams,* 76 Wash. 412, 136 Pac. 696. In that action the sum ·of fifteen thousand dollars had been advanced by the plaintiff under a guarantee by the defendant that he would place in her hands on demand certain notes and securities. The guarantor failing to comply with the terms of the guaranty, suit was brought to recover the fifteen thousand dollars advanced. The evidence showed that the notes and securities were of no value, and we held that, since the things she was to receive under the guaranty were valueless she could not sue to recover the sum advanced, but only the value of that which she would have received if the contract of guaranty had been complied with.

[3] Again, it is argued by respondents that, to allow the appellant to recover for the past due indebtedness on such a guaranty, is to place appellant in a position where, in a given case, an extension of credit of only ten dollars might be given, and yet the guaran-

tor made liable for a past due indebtedness of many thousands of dollars. But courts will not concern themselves with the amount either of past due indebtedness or the credit extended in the future. It is said that the amount of extended credit should be substantial before the guarantor is liable for past indebtedness.

But respondents suggest no rule, and we know of none, that could be adopted that is fairer to the parties and more capable of application than the one they have solemnly entered into, which is, "in consideration of the above named seller extending further credit to the said buyer." The parties have placed no limit upon the amount of the further credit, and we see no reason why we should. Any extension of credit, made in good faith, in compliance with the terms of the contract should be held sufficient. 23 Cyc. 920.

[4] It was also error to refuse to admit in evidence the books of the appellant to show the amount due it from Larsen at the time the guaranty was entered into. The contract of guaranty set forth above specifically provides for payment of the amount due from Larsen "as shown by the books of the company." *Rawleigh Co. v. Deavours,* 209 Ala. 127, 95 South. 459.

The judgment is reversed, with instructions to grant a new trial.

MACKINTOSH, C. J., MAIN, and HOLCOMB, JJ., concur.