[No. 24354.    Department One.    April 4, 1933.]

MARION STEAM SHOVEL COMPANY, *Respondent*, v. A. L. AUKAMP, *Appellant*.[1]

[1]Reported in 20 P. (2d) 851.

*Williams & Cornelius,* for appellant.

*LaBerge, Cheney & Hutcheson* and *Bogle, Bogle & Gates,* for respondent.

HOLCOMB, J.—Respondent is a dealer in new and used power shovels at Portland, Oregon, H. J. Balzer and his wife being the owners of the agency, the Machinery Company being simply a trade name. Balzer was the agent of respondent in Portland. Appellant is a contractor residing and doing business in Yakima. In the spring of 1930, he had a road building contract with the state for the grading and surfacing on a state highway near Lowden in the vicinity of Walla Walla, which required the movement of about 72,000 yards of material, all of which material was sand or sandy loam with no rock or other hard material.

Although appellant had the contract in his own name, it was, in fact, to be performed by a partnership consisting of himself and one Smith. In performing the work, Smith was to furnish the rock crushing equipment wherever necessary and appellant to furnish the grading machinery and equipment, including trucks. They found it necessary to procure a steam shovel, which shovel appellant was to furnish.

On about March 26, 1930, appellant and Smith went to the office of Balzer in Portland to purchase a shovel. Balzer had a used shovel known as a Type 7, gas friction shovel, made by the Marion Steam Shovel Company. In order to induce appellant to make the purchase, Balzer represented to him that this shovel had been completely disassembled and rebuilt, thoroughly overhauled, and that it would work just as well as a new shovel. He also represented that all of the worn parts had been replaced by new ones, and that it would handle one thousand cubic yards a day of such material as appellant had to move. During the course of negotiations, appellant advised Balzer of the nature of his contract, the time within which it had to be completed and the amount and character of material to be excavated.

In addition to the oral representations, the machine, which was in a somewhat dark shed, was shown to appellant and Smith. It had been newly painted all over, including the working parts, and gave the appearance of a new shovel and of having been entirely taken down and rebuilt. A power shovel is a large and complicated machine, and little can be ascertained as to its condition by an examination of what may be seen from the outside. Balzer was advised that the purchaser could not tell much as to the condition of the machine without running it, upon which he assured appellant that it had been thoroughly overhauled by the Marion Steam Shovel Company, and that when it overhauled a piece of machinery it did it right.

Appellant relied upon representations of Balzer, believed them to be true, and made an executory contract for the purchase of the machine. A cash payment of seven hundred dollars was then made. The machine was to have been shipped so as to arrive at Lowden on March 31, but due to some further necessary re-

pair it did not arrive until April 7, 1930. Previously, on April 1, 1930, Balzer wrote to appellant, saying:

"We regret it necessary to delay shipment of the shovel. As we advised you, the shovel had been completely disassembled and rebuilt, and all parts showing excessive wear were replaced. In tuning up the shovel, it was naturally necessary to make various adjustments, and we, felt from your conversation you had rather have us make them before shipment, rather than have them made on the job. We want you to have a smooth running shovel from the start, and trust the delay has not seriously inconvenienced you."

At about the time the machine arrived, appellant signed the executory contract of sale and ten promissory notes for $630 each, which were all dated as of March 26, 1930.

Inasmuch as appellant was unfamiliar with the operation of such a machine, an operator was sent along with the machine from Portland, whose name was Johnson. It developed that Johnson had previously operated the same machine for a contractor near Portland, and the machine was then in a bad condition of repair. This operator had difficulty with the shovel from the start. During the week that he was there, he was unable to make it dig more than about two hours a day. It was continually breaking down, or getting out of adjustment.

When they had attempted to operate it without success for about nine days, it was dragged off the work and respondent was notified, through Balzer. Balzer then sent one Cheatham, a service man in the employ of respondent, to examine and recondition the machine. Cheatham apparently did all within his power to make it run, but was unable to do so. Appellant was about to turn the machine back, but Cheatham induced him to try it a while longer, which he did. Later, one Cox, who was in the employ of respondent, in-

duced appellant to try the shovel a while longer, claiming it could be adjusted. On June 24, however, it broke down, and Johnson, the operator, left.

Appellant, then being thoroughly satisfied that it was not merely a matter of adjustment, placed it at the station at Lowden where he had received it, notified respondent that it was at its disposal and that he would pay nothing further on it. On September 6, 1930, he notified respondent, in writing, at its Portland office, to the same effect. It also appeared in evidence that only fifteen of this type of shovel were ever built by respondent, that they proved unsatisfactory, and that this machine wherever sold had to be taken back by respondent, it never having worked properly on any job.

Although the executory contract between respondent and appellant had no affidavit of good faith and was not acknowledged as a chattel mortgage, counsel for respondent conceived that it was a chattel mortgage, at least as between the parties thereto, and had it foreclosed as a chattel mortgage in Walla Walla county, where it had been left by appellant, by sheriff's notice and sale. No notice thereof was given appellant, other than by posting of notices of chattel mortgage sale by the sheriff of Walla Walla county upon the machine and in three places in the city of Walla Walla. Under that proceeding, the shovel was sold by the sheriff for one thousand dollars.

This action was brought on the notes for the balance remaining due, after the purported sheriff's sale and for attorney's fees, as provided in the notes. Appellant answered, setting up the fraudulent representations as outlined herein as a pure defense to the notes, and also alleged that the sale had been rescinded, and asked for special damages sufficient to put appellant in *status quo*. During the trial of the case the trial

court required appellant to elect between the defense of fraudulent representations and that of breach of warranty. Appellant elected to rely on fraud and misrepresentation, both as a matter of pure defense and as a foundation for damages upon the rescission of the contract. The jury returned a verdict in favor of appellant in the sum of $1,264.35.

Respondent moved for a judgment notwithstanding the verdict, and in the alternative for a new trial. The trial court granted judgment notwithstanding the verdict, and further ordered that, in case the judgment n. o. v. was reversed, then a new trial should be had. Judgment was thereupon entered in favor of respondent as prayed in its complaint. Appellant also moved for a new trial, which was denied by the trial court.

In granting the judgment n. o. v., the trial judge stated:

"The rule is that one who seeks to avoid a contract which he has been induced to enter into by fraudulent representations of another touching the subject matter of the controversy must proceed with reasonable promptitude upon discovering the fraud, or the right to rescind will be waived.

"In the case at bar the sale was on March 26, 1930; the answer and cross-complaint was verified September 30, 1931, and it was not until the time of trial, February, 1932, that there was an election to stand upon a rescission. . . ."

The presentation here is extremely confused.

The evidence is largely conflicting, and, of course, no findings were made. We keep in view the principle that, to establish fraud or misrepresentation in inducing a contract, the evidence must be clear and convincing. We consider and decide the case *de novo*, for reasons hereinafter stated. Although the record is lengthy and only a brief compendium has been made, we think it abundantly supports, by clear and convinc-

ing evidence, that there had been inducing misrepresentation.

Notwithstanding the letter that Balzer, the agent of respondent, wrote to appellant on April 1, 1930, at the trial he admitted on cross-examination that he did not think the machine had been rebuilt; that he did not believe at the time that the machine had been completely disassembled and rebuilt; that he thought that it had been overhauled, but did not think it had been completely disassembled and rebuilt; that he did not recall telling appellant that the machine had been completely disassembled and rebuilt; and that, if he did tell him so, it was not true.

There are so many varying contentions made by appellant and respondent that they can be but briefly discussed. Respondent contends that the case was never a jury case, but one in equity, and should have been tried and decided by the court, while appellant insists to the contrary. Neither they nor the trial judge seem to have properly construed our cases on this and cognate questions.

Appellant interposed the defense of fraud, both as a pure defense to the right of plaintiff to recover (*State ex rel. American etc. Mtg. Co. v. Tanner,* 45 Wash. 348, 88 Pac. 321), and also as a ground for recovering special damages. This he could not do in one defense. Since he sought to rescind the contract, it was an equity action, not to be decided by a jury. *Da Ponte v. Simonian,* 127 Wash. 214, 220 Pac. 799, 222 Pac. 901; *Main v. Western Loan & Building Co.,* 167 Wash. 1, 8 P. (2d) 281; *Vickerman v. Kapp,* 167 Wash. 464, 9 P. (2d) 793.

As the situation was presented in the lower court when the evidence of misrepresentation had been introduced by appellant and the court compelled him to elect as to which ground of recovery he relied upon,

the trial judge should then have proceeded as was done in *Schroeder v. Hotel Commercial Co.,* 84 Wash. 685, 147 Pac. 417. In that case, after a verdict had been returned in favor of the defendant upon the same kind of a defense, the trial court concluded to treat the verdict of the jury as merely advisory, made findings of fact, conclusions of law, and entered a decree in favor of the defendant. In that case, rescission of the contract was not attempted by the vendee until about a year and a half after the contract was executed and partly performed by the vendee, as to which we held that

"Diligence in rescission is always a relative question. What is laches in a given case is always dependent upon the particular circumstances. [Citing cases.] Delay in formal rescission, induced by promises of the vendor to make machinery work properly, is not a waiver of the right to rescind."

The trial court there decreed that the contract be cancelled and that the vendee have an equitable lien upon the chattel for four hundred dollars which had been paid thereon, with interest from the time of payment, which we affirmed.

See, also, *Da Ponte v. Simonian, supra; Fruit v. Fancher,* 137 Wash. 311, 242 Pac. 11; *Felthouse & Co. v. Bresnahan,* 145 Wash. 548, 260 Pac. 1075.

The last two cited decisions involve cases where the statute of limitations as to affirmative relief to be granted upon such cross-complaints by defendants was in issue, and they held that, while the matter alleged in a cross-complaint may be barred by the statute of limitations as to any affirmative relief, they constituted good defenses as offsets to the extent of the claims of plaintiff.

In the last cited case, we said:

"Respondent admits the rule of *Fruit v. Fancher, supra,* but contends that, because the appellants did

not in their answer ask for recoupment to the extent of respondent's claim, but prayed for damages far in excess of that sum, they cannot recover. However, it must be borne in mind that the prayer was two-fold; the first part being that respondent's cause of action be dismissed. If respondent had demurred to the cross-complaint the court would, no doubt, upon hearing, have stricken the prayer for damages in the sum of thirty thousand dollars, but allowed the claim of fraud to stand as a defense to the notes. This was the procedure followed in *Fruit v. Fancher, supra.*"

So here: Although appellant prayed for damages far in excess of the amount of recovery claimed by respondent as a deficiency upon the notes after it foreclosed by sheriff's sale of the chattel mortgage, the same facts were set up as a pure defense to the action of respondent.

Since the cross-action of appellant was one to rescind a contract and triable in equity (*Main v. Western Loan & Building Co., supra*), it must be so considered and disposed of by us.

Under the principles announced in our former cases cited and others therein discussed, appellant was not compelled to bring an action against respondent for damages, but could await the action of respondent on the notes and interpose the inducing fraud as a pure defense to the action. It would seem that laches should be no more valid as a bar to such defense than the statute of limitations, as to which we have consistently held that, so long as a cause of action survives, the equitable defense thereto should survive also. On the facts in this case, the statute of limitations had not run by a year or more as to any cause of action of appellant for damages for the deceit and fraud.

Appellant might have brought either one of two actions: one for the rescission and recovery of the

purchase price, and the other for damages because of the false representations and the injury resulting therefrom and retain the property. His cross-complaint is of the first kind of action. *Reilly v. Hopkins,* 133 Wash. 421, 234 Pac. 13.

Having taken the position that the contract should be rescinded, appellant elected not to rely on the contract, and is not now in position to insist upon both remedies, since they are inconsistent. He could not in the same action seek for a rescission and an enforcement of the contract. *Babcock, Cornish & Co. v. Urquhart,* 53 Wash. 168, 101 Pac. 713; *Myers v. Calhoun, Denny & Ewing,* 85 Wash. 689, 149 Pac. 19; *May v. Roberts,* 126 Wash. 645, 219 Pac. 55; *Jacquot v. Farmers Straw Gas Producer Co.,* 140 Wash. 482, 249 Pac. 984.

The submission to the jury of special damages and its award of $1,264.35 was erroneous. The only recovery to which appellant is entitled under our decisions is the seven hundred dollars paid as part of the purchase price on the machine, in addition to the defeat of any recovery on the notes of the purchase price.

As to most of the issues presented by the parties, including attempts in writings to contract to preclude parol evidence of fraud inducing contract, without extended discussion thereof, they are controlled by our decisions, and the cases therein cited, of *Producers Grocery Co. v. Blackwell Motor Co.,* 123 Wash. 144, 212 Pac. 154; *Holcomb & Hoke Mfg. Co. v. Auto Interurban Co.,* 140 Wash. 581, 250 Pac. 34, 51 A. L. R. 39; and *Weller v. Advance-Rumely Thresher Co.,* 160 Wash. 510, 295 Pac. 482.

We agree with the trial court that, in an action to recover a deficiency left after the foreclosure of a chattel mortgage by sheriff's sale, such foreclosure

can in no wise be considered as *res judicata* of the issues here involved. Nor is there anything in the case of *Balzer v. Aukamp,* 166 Wash. 268, 6 P. (2d) 614, *res judicata* of the issues in the instant case.

The judgment is reversed, with instructions to enter a judgment in favor of appellant that respondent take nothing in its action to recover the deficiency, and that appellant have judgment for the amount paid down as part of the purchase price of seven hundred dollars, with interest from the date of payment, March 26, 1930, and costs in the trial court and on appeal.

Beals, C. J., Parker, and Mitchell, JJ., concur.

Millard, J. (dissenting)—I dissent. I can not agree that appellant sustained the burden of proving false representations upon which he relied to his hurt. There was no breach of warranty, express or implied. The appellant purchased and took this second-hand machinery at his own risk. The contract specifically so provides. Appellant knowingly subscribed to that contract. He should not now be heard to say that he ignored the terms of that contract and was induced by previous oral representations at variance therewith to make the purchase.