[No. 27894. *En Banc.* June 29, 1940.]

THE W. T. RAWLEIGH COMPANY, *Respondent,* v. FRANK GRAHAM et al., *Appellants.*[1]

[1]Reported in 103 P. (2d) 1076.

*T. B. Southard* and *Wm. M. Clapp,* for appellants.

*Clinton & Southard,* for respondent.

BEALS, J.—Plaintiff herein, The W. T. Rawleigh Company, is a corporation organized under the laws of the state of Illinois, maintaining its main office at Freeport, in that state. The company maintains numerous branch offices throughout the United States, one being located at Oakland, California. Plaintiff is engaged in the sale and manufacture of merchandise, which it sells at wholesale to certain persons, who in turn retail the commodities to consumers.

Plaintiff uses a standard form of contract, which those who sell its products sign, and during the year 1931, one F. W. Cline, a resident of the state of Washington, entered into such a contract with plaintiff, pursuant to which he purchased and sold to his customers various articles of merchandise. A renewal contract was executed in 1932, and another similar contract signed the following year. The defendants in this action, Frank Graham and Mr. and Mrs. Zack Finney, executed the 1933 contract as sureties. In May, 1934, Cline signed another renewal contract for that year, defendants also signing the contract as sureties. The 1933 and 1934 contracts were identical, save that at the end of the latter contract appears, written in longhand, "Surety limit not to exceed $975."

On the date of the acceptance by plaintiff of the 1934 contract, the latter's books showed that Cline was indebted to it in the sum of $972.46. No merchandise was purchased by Cline during the year 1934, but plaintiff allowed him credit in the sum of $85.89 for merchandise which Cline returned, leaving a balance due to plaintiff from Cline in the sum of $886.57.

Plaintiff instituted this action against defendants, as Cline's sureties, seeking to recover judgment for the amount last mentioned. In its complaint, plaintiff set out both the 1933 and 1934 contracts, attaching copies thereof as exhibits to its complaint, demanding a recovery upon both contracts.

Defendants moved against the complaint, seeking an order requiring plaintiff to elect as to which contract it would rely upon. They also demurred to the complaint upon several grounds, their motion and demurrer being overruled. Defendants then answered the complaint, setting up six affirmative defenses: First, that the 1933 contract ended December 31st of that year and thereafter was of no force and effect, that the 1934 contract, signed in May of that year, superseded all prior contracts, and that plaintiff could maintain no claim upon any contract save the latter; second, that defendants were induced to sign both the 1933 and 1934 contracts by false and fraudulent representations made by plaintiff's agent; third, that the action was barred by the two-year statute of limitations; fourth, that the action was barred by the three-year statute of limitations; fifth and sixth, that the contracts were procured by fraud and were without consideration.

Plaintiff's demurrer was sustained to the first, third, and fourth affirmative defenses, and overruled as to the other three. Plaintiff then replied with denials to the affirmative defenses, and the issues were tried to a jury, which returned a verdict in favor of the defendants.

Plaintiff moved for judgment in its favor notwithstanding the verdict, or in the alternative for a new trial, and the court granted the former motion for judgment in plaintiff's favor as matter of law. The court then signed findings of fact and conclusions of

law in plaintiff's favor, followed by a judgment against defendants, from which they have appealed.

Appellants then moved for new trial, which motion was denied. Cline was named as a defendant in the action, but was never served with process and entered no appearance, the judgment running only against appellants, who were Cline's sureties.

Respondent has moved to strike the transcript and the statement of facts filed by appellants. The motions are without merit, and are denied.

Appellants assign twenty-seven errors, contending that the trial court erred in overruling their motions and demurrers directed against the complaint; in admitting in evidence, over their objections, testimony and exhibits offered by respondent; in entering findings of fact and conclusions of law in respondent's favor; in granting respondent's motion for judgment in its favor notwithstanding the verdict; in entering judgment against appellants; and in denying their motion for a new trial. Appellants also argue that the trial court erred in not limiting respondent's recovery to the value of sales made under the 1933 and 1934 contracts, and in not holding that payments made by Cline after January 1, 1933, should be applied in payment for sales made by respondent to Cline after that date.

The contracts between the parties to this action are identical, with the exception above noted. Cline signed one contract, containing the following paragraph:

"(1) In Consideration of the promises of the undersigned Buyer, The W. T. Rawleigh Company, an Illinois corporation, agrees to sell and deliver f. o. b. Oakland, California, or at any other point or in any other manner agreed upon, such reasonable quantities of its Products as the Buyer may order at current wholesale prices, and on time, and if desired will sell Buyer an Auto Body and/or Equipment, or sample cases, for

cash or on time; and the Buyer in consideration of the above agreements hereby promises to pay Seller in full for all such Products so sold and delivered under this Contract, also agrees to pay any balance due Seller at the date of the acceptance of this Renewal Contract for Products previously sold Buyer under any and all former Contracts, by cash or by installment payments satisfactory to Seller at Invoice prices and according to the terms and conditions thereof, including any transportation charges incurred, paid or furnished by Seller, and subject to such cash discounts as may be shown in current discount sheets."

Appellants then signed a contract of suretyship, the pertinent portions of which read as follow:

"For and in consideration of The W. T. Rawleigh Company accepting the above Contract, or in consideration of the above named Seller extending further credit to the said Buyer, we, the undersigned, do hereby jointly and severally enter ourselves as sureties, and unconditionally promise, guarantee and agree to pay said Seller for any and all goods, wares and merchandise sold said Buyer under the above and foregoing Contract, hereby expressly consenting and agreeing to all the terms, conditions, and provisions thereof; and we also specifically promise and agree to assume and pay any and all prior indebtedness that may be due and owing said Seller on the date of the acceptance of this Contract, as shown by Seller's books, for any and all goods, wares and merchandise previously sold to said Buyer under and by virtue of any and all prior Contracts or agreements; hereby binding our heirs, executors, administrators or assigns. We hereby expressly waive notice of the acceptance of this Contract, and of the shipment of goods to the Buyer, and of extension of credit to the Buyer, and of the extension of time in which to pay for the goods so purchased, and waive all notice of any nature whatsoever. We also agree that any statement made by the Buyer as to the amount of indebtedness due at

any time shall be binding upon us. We also agree that it shall not be necessary for the Seller to first exhaust its remedies against the Buyer before proceeding to collect from us."

■ This action was instituted January 21, 1938, more than three, but less than six, years after the contracts were signed. Appellants contend that, because respondent was required to introduce evidence *dehors* the contract, to show the amount of goods purchased thereunder by Cline and the prices thereof, the cause of action sued upon is based upon a contract partly written and partly oral, and that therefore, under the doctrine as stated by this court in the case of *Ingalls v. Angell*, 76 Wash. 692, 137 Pac. 309, it should be held that the contract between the parties is one resting in parol, and an action thereon barred unless commenced within three years. In support of their contention, appellants cite several cases in which contracts were held void under the statute of frauds, because the writings relied upon were incomplete, oral testimony being necessary to show the complete contract between the parties. In the case at bar, the written contract relied upon by respondent is complete, and furnishes an objective standard for the ascertainment of any amount due thereunder from Cline to respondent.

In the case of *Curtis v. Sexton*, 201 Mo. 217, 100 S. W. 17, it was argued that a contract was not based upon " 'a writing . . . for the payment of money or property.' " The supreme court of Missouri, being of the opinion that "the only necessity for going beyond the paper writing to make out the case is to show the performance of the contract on the part of the plaintiff and the breach on the part of the defendant," held that the action was one founded on a written contract.

The supreme court of Missouri approved the same

rule in the case of *Missouri etc. Co. v. American Surety Co.*, 291 Mo. 92, 236 S. W. 657.

Rem. Rev. Stat., § 157 [P. C. § 8162], par. 2, provides that "An action upon a contract in writing, or liability express or implied arising out of a written agreement," may be brought within six years after the right of action accrues, and we hold that this action is governed by that section of the statute.

■ In its complaint, respondent pleaded the 1933 contract and that of 1934, seeking a recovery upon both. Appellants moved that respondent be required to elect as to which contract it would rely upon and assign error upon the denial of their motion. The two contracts are nowise inconsistent; they simply cover different periods of time. From the evidence, it appears beyond question that respondent sold no goods to Cline after December 31, 1933. Appellants contend that the 1934 contract entirely superseded that of 1933, but this argument is not sound, and the trial court properly held that the 1933 contract was still in full force and effect, notwithstanding the making of the later agreement.

■ Appellants pleaded that both contracts were procured by false and fraudulent representations, but the evidence which they introduced under these allegations was confined to the contract signed in May, 1934. If respondent were seeking to establish any liability under this contract, it is probable that the jury's verdict in favor of appellants would control, but the only transaction between respondent and Cline subsequent to December 31, 1933, was the return of some goods by Cline to respondent, for which a credit was given, which of course inures to appellants' benefit. Assuming that the 1934 contract was void, as procured by false and fraudulent representations to appellants,

this does not help them, as their obligation is complete under the 1933 contract.

The execution of the 1934 contract by appellants nowise affected their liability under the 1933 contract. Respondent has the right to recover upon either contract, based upon the claim upon which it sued herein. In the case of *Buckley v. Massachusetts Bonding & Ins. Co.*, 113 Wash. 13, 192 Pac. 924, this court said:

"Under the practice in this state, where a plaintiff has two or more distinct grounds for the relief he asks, the one not inconsistent with the other, he may set forth all of them in his complaint in orderly sequence, and may recover if he proves any one or more of them."

The cases relied upon by appellants in this connection are not in point, as they concerned inconsistent contracts which could not stand together. In such cases, the later contract supersedes the earlier.

In the case of *Rawleigh Co. v. Langeland*, 145 Wash. 525, 261 Pac. 93, this court had before it a very similar, if not identical, contract, upon which this respondent was seeking to establish a claim against the defendant in the case cited. It was argued on behalf of a surety to the contract that there was no consideration for the surety's assumption of a past indebtedness, this court holding that the trial court had erred in excluding evidence as to a claim based upon such an indebtedness. In the course of the opinion, this court said:

"It is unnecessary here to construe the contract to determine whether it requires the one to sell and the other to buy, for both parties treated it as such, and goods were sold by appellant and bought by Larsen making it a completely executed contract so that any want of mutuality cannot now be urged."

A similar contract was before this court in the case of *Rawleigh Co. v. Harper*, 173 Wash. 233, 22 P. (2d)

665, in which this court reversed a judgment of the superior court in favor of the defendants, and directed the entry of judgment in favor of the plaintiff.

Appellants assign error upon the admission of several depositions taken on behalf of respondent in a prior action between the same parties, in which respondent, as plaintiff in the prior action, had taken a voluntary nonsuit without prejudice to the institution of a new action. It appears that, in the complaint in the first action, respondent pleaded only the 1934 contract, and appellants now argue that the cause of action was different from that in the case at bar, as here respondent pleaded both the 1933 and the 1934 contracts. The two causes are identical, within the provisions of Rem. Rev. Stat., § 1246 [P. C. § 7731], providing for the admission in evidence of depositions taken in one cause in a subsequent proceeding "commenced for the same cause between the same parties."

Appellants complain of the admission in evidence, over their objection, of respondent's exhibits Nos. 7 and 8, the first consisting of two loose-leaf ledger sheets, apparently taken from respondent's books of account at its Oakland branch, the sheets containing an itemized list of all transactions between respondent and Cline. Exhibit No. 8 is simply a summary of exhibit No. 7. The latter was introduced in evidence in connection with the deposition of J. D. Gilbert, a witness on behalf of respondent, exhibit No. 8 having been introduced in connection with the deposition of J. R. Jackson. The evidence introduced by respondent in connection with these exhibits is extremely scanty. The witnesses who testified concerning the exhibits, respectively, knew very little about them. The judgment, however, does not depend for support only upon these exhibits.

Respondent also introduced in evidence its ex-

hibit No. 9, signed by F. W. Cline, which reads as follows:

"NOTICE:   If the above balance is correct, please sign the following account stated and return immediately. If not correct furnish us a statement of your debits and credits and point out claimed errors if any.

ACCOUNT STATED

Jul 20 1934

"The W. T. Rawleigh Company      DATE July 14, 1934

"Dear Sirs:

"I have examined the June Statement of Account and find the balance of $972.46 to be the correct balance due the Company at the close of business June 30, 1934, which balance I agree to pay according to the terms of my Contract.

"Customer Sign Here . . . . . (SIGNED) F. W. CLINE
      and Return to Company            Wilbur, Wash."

The date July 14, 1934, is apparently in the handwriting of Cline. Appellants objected to the admission of this exhibit, and assign its admission as error. They contend that the admission of indebtedness by the principal is not binding upon appellants, who were sureties upon the contract. Ordinarily, the rule of law relied upon by appellants applies, but in the portion of the contract which appellants signed, quoted above, is found the following:

"We also agree that any statement made by the Buyer as to the amount of indebtedness due at any time shall be binding upon us."

Appellants do not challenge the genuineness of exhibit No. 9, and in view of the contract between the parties, we find no reason for holding that the trial court erred in admitting the exhibit. The indebtedness was sufficiently proven by Cline's acknowledgment.

Appellants vigorously challenge respondent's

right to maintain this action, contending that respondent, although never having taken out any license to engage in business in the state of Washington, was, in fact, engaged in business therein, and cannot sue in the courts of this state. The question of the right of respondent to maintain an action in this state was considered by this court in the case of *Rawleigh Co. v. Harper, supra,* in which we held that respondent was engaged solely in interstate commerce, and that its institution of an action in this state to recover indebtedness did not constitute doing business in the state. The record now before us calls for no different result. Upon the authority of the case cited, it must be held that appellants' position upon the question now under discussion is not well taken.

Appellants vigorously assail certain of the findings entered by the trial court. These, however, are supported by the preponderance of the evidence.

We find no controversy in the evidence going to the merits of respondent's claim, upon which the jury was entitled to pass. Assuming that the jury properly found that the 1934 contract was induced by fraud, that does not affect the liability of appellants under the 1933 contract. The trial court properly granted respondent judgment notwithstanding the verdict of the jury.

As above noted, the trial court, after a verdict in favor of the appellants (defendants below), granted respondent's motion for judgment in its favor notwithstanding the verdict, and then proceeded to make findings of fact, pursuant to which a judgment was entered in favor of respondent. It has been suggested that, in a law case, tried to a jury, the superior court, after granting a motion for judgment notwithstanding the verdict made by a party against whom the jury's verdict was returned, has no authority to make findings

of fact in support of a money judgment, and that, in such a situation, the court should limit its action to the granting of a new trial.

It is, of course, the law that if in the opinion of the trial court there is no conflict in the evidence as to the issue of fact to be submitted to the jury, the court may grant a motion for a directed verdict, made at the close of the case, either simply in favor of the defendant, or for a particular amount, in favor of one party, if the undisputed evidence shows such sum to be due, or in favor of one party, the jury to fix the damages. It would seem that, if the supposed issue of fact has been submitted to the jury, the court, upon further consideration after the return of the verdict, and upon a motion for judgment in favor of the losing party notwithstanding the verdict, could not only grant the motion, if convinced that there was no disputed question of fact upon which the jury should pass, but could make findings in support of a money judgment, if, according to the undisputed evidence, the entry of such a judgment was proper. There would seem no good reason why the court may not do after the return of the verdict what it could unquestionably, in another way, do before.

Appellants moved for a new trial, in support of which motion they filed an affidavit setting up certain facts which they alleged they discovered after the trial. Taking this matter at its face value, it cannot be held that the trial court erred in denying appellants' motion.

Finding no error in the record, the judgment appealed from is affirmed.

MAIN, SIMPSON, DRIVER, and ROBINSON, JJ., concur.

MILLARD, J. (concurring)—I concur in the result. I do not agree with the opinion on the question of practice.

STEINERT, J. (concurring)—I concur in the result solely upon the grounds that the evidence to which appellants objected was properly admitted; that there was no conflict in the evidence, including that establishing the amount owing by appellants under the terms of the 1933 contract; that the evidence, not being in conflict, presented simply a question of law; that therefore the motion for judgment notwithstanding the verdict was properly granted; and that, in consequence, the findings made by the court were mere surplusage and have no material bearing on the case.

BLAKE, C. J. (dissenting)—I dissent. As I understand it, the office of the motion for judgment *non obstante veredicto* does not extend to cases where it is necessary to make findings of fact to support the judgment. This is a law case, in which judgment, to be valid, must rest upon the verdict of a jury or upon findings of fact made and entered by the judge. In no such case are findings mere surplusage. They are essential to the validity of the judgment. Rem. Rev. Stat., § 367 [P. C. § 8486]; *Colvin v. Clark*, 83 Wash. 376, 145 Pac. 419; *Kietz v. Gold Point Mines*, 198 Wash. 112, 87 P. (2d) 277.

The force and effect of the statute is not abated simply because the judge may conceive the facts to be undisputed. Although the evidence in this case may not be conflicting in any respect, the practice here sanctioned may, in many cases, lead to denial of the right of trial by jury guaranteed by Art. I, § 21, of the state constitution. The court always has the power to grant a new trial if it believes the verdict is against the weight of the evidence. But the fact that the court would have been justified in directing a verdict or in granting a new trial does not warrant it in entering

a judgment *non obstante.* Freeman on Judgments (5th ed.), § 10.

The decisions relied upon to support the practice sanctioned here (*Schroeder v. Hotel Commercial Co.,* 84 Wash. 685, 147 Pac. 417; and *Marion Steam Shovel Co. v. Aukamp,* 172 Wash. 455, 20 P. (2d) 851) were cases of equitable cognizance. In such cases, the verdict of the jury is merely advisory and findings of fact are not necessary to support the decree.