[No. 30146. Department Two. July 3, 1947.]

MARY A. CROOK, *Appellant,* v. JOHN TUDOR *et al.,*
*Respondents.*[1]

[1]Reported in 182 P. (2d) 740.

*Stuart K. Nielsen,* for appellant.

*Simmons & McCann,* for respondents.

JEFFERS, J.—Mary A. Crook instituted this action against John Tudor and Iva Tudor, his wife, on or about January 15, 1946, to rescind a certain real estate contract entered into between the parties on September 1, 1945, wherein John Tudor and wife were sellers and Mary A. Crook was purchaser.

It is alleged, as a basis for the complaint, that, on or about December 24, 1945, defendants, without notice to plaintiff, and without the knowledge or consent of plaintiff, entered the premises described in the contract, took possession thereof, and placed a padlock thereon so as to exclude plaintiff therefrom; that, by their actions, defendants have elected to and have rescinded such contract. The complaint contains some further allegations in reference to alleged concealment of the fact that the house had been constructed in complete disregard of all building regulations of the city of Seattle, and that the septic tank was improperly constructed.

Defendants, by their answer and cross-complaint, admitted the execution of the contract; admitted that plaintiff had paid one thousand dollars on the purchase price, as provided in the contract; admitted that plaintiff made payments of fifty dollars on or about October 2, 1945, and November 2, 1945; admitted that under the terms of the contract the sellers were required to give the purchaser thirty days notice of their intention to declare a forfeiture; denied that they breached the contract; and denied that they fraudulently concealed anything from plaintiff.

It is alleged in the cross-complaint that plaintiff failed to make the payment due on December 1, 1945, and that, after such default, and on December 21, 1945, defendants visited the property and discovered the same abandoned, the doors unlocked, the furniture and furnishings which had been included in the contract removed from the house, and the plumbing fixtures loosened; that thereupon, in reliance upon such abandonment, defendants did cause a

padlock to be placed on the door, and did secure and fasten the windows to preserve their property against vandalism or theft; that they likewise posted notices on both the front and back doors, inviting anyone interested to inquire of defendants at their address therein stated. It is further alleged that, during her occupancy, plaintiff allowed the property to be run-down and unkept, and committed waste by burning the inlaid linoleum on the floor.

Defendants prayed that plaintiff's complaint be dismissed; that plaintiff be adjudged to have abandoned the property and to have voluntarily forfeited her interest under the contract and all sums paid thereunder; that defendants be awarded judgment against plaintiff for the value of the furniture appropriated by her and a judgment quieting title in the property against any claims of plaintiff. By her reply, plaintiff denied the affirmative allegations of the answer and cross-complaint.

The cause came on for hearing before the court on September 16, 1946, and thereafter the court made and entered findings of fact, conclusions of law, and judgment.

The trial court made fifteen findings of fact. It found that the monthly payment due December 1, 1945, was not paid, and that defendants visited the property on December 21, 1945, to ascertain why such payment had not been made, and found the house and premises abandoned, the doors unlocked, the rear door ajar, all of the furniture and stove removed from the premises, bathroom and toilet fixtures loosened, faucets removed, the shower gone, the kitchen linoleum burned through in two places, water on the kitchen floor and on the bedroom floor where it had leaked out of the pipes where the kitchen stove had been disconnected, the floors warped, windows broken, and no notice or indication of where plaintiff had gone; that defendants went to the sheriff's office to find out what to do about their furniture and the situation generally; that, being advised by the sheriff to lock the premises, they then went to the prosecuting attorney for King county, who gave them similar advice and recommended that they see a lawyer in civil practice; that they accordingly went to

see a lawyer, who advised them to lock the premises to protect them from vandalism and waste, and to leave their name and address in a conspicuous place; that, following the advice received, defendants, on December 22, 1945, placed padlocks on the front and back doors, boarded up the broken windows, and left instructions to any interested party to contact them, giving their name and address; that such notices were seen and read by plaintiff.

The court further found that thereafter, on or about December 24, 1945, defendants caused a notice to be sent to plaintiff by registered mail, informing her of her default under the contract, and that an examination of the premises indicated that she had removed therefrom and "abandoned the same without notification to the vendors"; that such notice was never delivered to the plaintiff, although properly addressed and registered; that attempts to deliver the same were made on three separate days by the postmaster, as evidenced on the envelope in which the notice was contained, which envelope was introduced in evidence as defendants' exhibit No. 2; that before the thirty days had expired, as set forth in the notice, and on or about January 15, 1946, plaintiff commenced this action against defendants, asking for judgment rescinding the contract and for return of her payments of eleven hundred dollars.

Finding No. 9:

"The court finds that plaintiff abandoned said premises and that defendants were justified under all of the circumstances in concluding that the plaintiff had abandoned said premises without giving any notice either to the bank or to the vendors. [Plaintiff was required by the contract to make her payments to the Pacific First Federal Savings & Loan Assn.]"

Finding No. 10:

"The court finds that plaintiff left no forwarding address at the time of her removal from said premises in early December of 1945 but continued to receive her mail at 3516 Chicago Street, Seattle, Washington, until about the middle of February, 1946, but that she ignored the notices of registered mail and failed to call for the notice sent her on December 24, 1945, and referred to above as Exhibit

No. 2 of defendants. [Exhibit No. 2 was a registered letter, the envelope showing notices sent out, and containing the notice hereinbefore referred to.]"

The court further found that defendants, on or about February 22, 1946, after having located and replevined their furniture, moved into and took possession of the premises, and have remained there ever since; that plaintiff, at no time since November 1, 1945, has tendered or made any payments, as required by the contract, or at all; that defendants have not been in default at any time in the obligations imposed upon them by the contract; and that they acted reasonably and diligently in protecting the property, as hereinabove set forth.

The court further found that plaintiff was estopped to claim any fraud or misrepresentation in connection with her purchase of the property, for the reason that she went into possession after a full opportunity to examine the property, and thereafter made payments under the contract with full knowledge of the premises.

The court concluded that defendants were entitled to a decree quieting their title to the premises against any and all claims of plaintiff, and forfeiting all payments made by plaintiff, unless plaintiff should, within thirty days from September 16, 1946, pay to defendants all past due payments in accordance with the terms of the contract, together with all costs incurred by defendants in repossessing their furniture and all costs incurred by defendants in the defense of this action, including the sum of one hundred dollars as attorney's fees; that, in the event these payments should be made, the contract should be reinstated, otherwise plaintiff's complaint should be dismissed, and a decree canceling the contract, forfeiting the payments thereunder, and quieting the title to the premises in defendants, would be entered on October 16, 1946.

On October 26, 1946, upon the application of counsel for defendants, a supplemental and final judgment was entered in favor of defendants and in accordance with the conclusions of law. Plaintiff has appealed from the judgment entered.

Appellant makes eleven assignments of error. In view of the conclusions we have reached, we deem it necessary to discuss only the following: The court erred in finding that appellant had abandoned the premises and contract; in finding that respondents had not breached and terminated the contract; in finding that appellant was in default under the contract; in finding that appellant waived the provision of the contract requiring the vendors to give thirty days written notice of any claimed breach before declaration of a forfeiture; in granting a decree forfeiting appellant's rights under the contract and quieting title against all claims of appellant; and in granting judgment against appellant for reasonable attorney's fees.

It was in the lower court, and it is here, the theory of appellant that when respondents put padlocks on the doors and boarded up the broken windows on December 22, 1945, they indicated an intent to deprive appellant of her rights in the property, and that, by so doing, they breached and terminated the contract and cannot complain that appellant accepted those acts as a rescission of the contract by respondents, justifying appellant in bringing this action for a return of the payments made by her. Appellant denied any intention of abandoning the premises. The only excuse she made for not making the payment due under the contract on December 1st was that she was short of money.

It appears from appellant's testimony that she had a friend in Los Angeles, a Mrs. Rorer, who had two children, was separated from her husband, and was having a difficult time making a living for herself and children. This lady and her children came to Seattle in August, 1945, and there is no question but that appellant entered into the contract here involved for the purpose of obtaining a home for herself, Mrs. Rorer, and the children. In fact, appellant stated that she bought the place for all four of them, and they all moved into the property. Mrs. Rorer assisted in making the payments. In addition to the down payment, two other payments were made under the contract, one in October and one in November. On or about November 28, 1945, Mrs. Rorer and her children moved back to Cali-

fornia. Appellant did not make the payment due under the contract on December 1, 1945, and has never made any payments since the one made in November.

Shortly after Mrs. Rorer left, appellant moved out of the house, giving as her reason that she did not like to live there alone. About December 20th, she moved the furniture out of the house and stored it in a garage. Appellant admitted that she did not inform respondents or the bank that she had moved out of the property, or that she had moved the furniture out. This furniture was sold with the house and was described in the contract. Her explanation of why she moved the furniture was that she was going to rent the house unfurnished.

Respondents, not having received the December payment, and having inquired about it several times at the bank, went out to the property on December 21, 1945, to see why the payment had not been made, and found the house in the condition described in the findings, and the furniture gone. They then visited the sheriff and the prosecuting attorney, and finally contacted a lawyer. As a result of the advice received, they went out to the property on December 22, 1945, and put padlocks on the doors. Respondents denied that at this time it was their intention to terminate the contract, or to do other than protect the property from vandalism and theft.

On December 24, 1945, respondents, having failed to locate appellant, deposited in the postoffice a registered letter, addressed to Mary A. Crook, 3516 Chicago street, Seattle 8, Washington, containing the following notice:

"You will please take notice that you are in default of your contract of purchase, dated September 1, 1945, in that the installment due December 1, 1945, has not been paid.

"You are also notified that an examination of the premises indicates that you have removed the personal property from said premises, and have abandoned the same, without notification to the vendors.

"You are hereby notified that the vendor elects to cancel said contract, and all of your rights under said contract are terminated, and that the payments heretofore made by you will be retained by the seller as liquidated damages.

"You are required to surrender the premises within thirty (30) days from the date of this notice to you, and upon your failure so to do, an action will be brought for possession and to clear the title to said premises."

Although appellant claimed she got her mail at the above address until in February, 1946, the above-mentioned letter was never called for by her, although notices were sent to that address by the postmaster.

Appellant stated that she went out to the house on December 23, 1945, and found padlocks on the doors and a sign to see the owner, John Tudor, at the St. James hotel; that she did not try to contact respondents or the bank but immediately went to see a lawyer, and this action was commenced on January 15, 1946.

We are of the opinion that respondents were justified in believing that appellant had abandoned the property, considering all the circumstances of this case, including the fact that appellant had not made her December payment and had not contacted either the bank or respondents to explain why such payment was not made, the condition in which respondents found the house when they visited the premises on December 21, 1945, the removal of the furniture, including the stove, and the fact that appellant had left no notice of where she could be contacted. We are further of the opinion that the trial court was justified in finding that appellant did abandon the premises.

The trial court, apparently for the purpose of testing appellant's good faith, and also for the purpose of permitting her, as a matter of equity, to have the contract reinstated, gave her thirty days in which to meet the conditions imposed, as hereinbefore set out, before entering any final judgment; but appellant did not see fit to meet those conditions and, so far as the record shows, made no effort to do so.

The action taken by respondents on December 22, 1945, and the conclusions and judgment entered by the trial court were, in our opinion, legally justified by our decision in the case of *Zane v. Hinds,* 136 Wash. 352, 240 Pac. 6. It may be admitted that the factual situation in the cited case is not the same as that in the instant case, relative to the

actions of the vendors after discovering what appeared to them to be an abandonment of the premises by the purchasers, in that in the cited case the vendor actually contacted the purchaser. But in the instant case, appellant admitted she saw the sign on the door, she knew the furniture had all been removed from the house, she knew that at least one of the windows was broken, she knew that she had informed neither the bank to whom she was to make her payments nor respondents that she had moved out of the house or that she had removed the furniture, nor had she explained her failure to make the December payment. We are impressed with the fact that, had it been appellant's intention to keep the property, she would have contacted either the bank or respondents and asked for some explanation before bringing an action to rescind the contract.

In the *Zane* case, *supra*, the vendors visited the property and, at that time, found it abandoned, gates down, the barn doors open, and estrays running at large upon the place. Vendors then called on one Snydar, the original vendee, and asked him to return to the farm. Snydar had, subsequent to the making of the original contract, sold, assigned, and transferred his interest in the contract to A. G. Hinds, in consideration of the latter agreeing to pay the amount due Zane and the amount of a mortgage held by the Washington Mutual Savings Bank. We quote from the opinion:

"The pleading and arguments of the appellants [vendees] are that the respondents [vendors], in taking possession of the property in April, 1924, were trespassers, thereby committing a breach of the contract for the sale of the farm which entitled appellants to recover as damages certain amounts specified and claimed to have been expended by them on the farm. But, as already stated, the findings and proof were to the contrary. The respondents did nothing adverse or hostile to the rights of the appellants. [Vendors put a caretaker in charge of the farm.] They acted in protection of their own property. Upon the erroneous views of the appellants, a large number of assignments are presented which need not be discussed or further noticed in consideration of the outstanding, controlling fact that the appellants breached their contract and abandoned the

premises at a time when the respondents were wholly without fault."

We find in 55 Am. Jur. 813, § 392, under the general heading "Vendor and Purchaser," the following statement:

"Where the vendee under a contract for the purchase and sale of land goes into possession and the vendor retains title as security for the purchase money [in this state the vendor retains the legal title], the relation between them, so far as the security is concerned, is much the same as that of mortgagee and mortgagor. Hence, as a general rule, principles governing the rights and liabilities as between mortgagor and mortgagee for waste committed upon the mortgaged premises determine the duties of the vendee toward the vendor respecting use of the premises by the former, and his liability for any acts of waste committed thereon. The purchaser under a contract for the sale of land, although entitled to the possession of the land pending the payment of the purchase money and the making of the conveyance, has no right to commit waste to the impairment of the security of the vendor, in the absence, at least, of anything in the contract of sale enlarging his rights in this respect."

Certainly, under the theory of the rights and liabilities of a vendor and vendee under an executory contract for the purchase and sale of land, as announced by this court, the liabilities of a vendee for waste and impairing the security of the vendor would be as great as, if not greater than, where the vendor only retained title as security for the purchase money.

The same text, at p. 850, § 442, states:

"The vendee may in various ways surrender or lose his ordinary right to demand or notice before the commencement of an ouster proceeding against him, as by appropriate stipulations in the contract, *by abandoning possession, by asserting the termination of the contract,* or by assuming to hold the premises otherwise than under the contract." (Italics ours.)

Appellant admits that respondents would have the right to shut and lock the doors if they found them open, and admits that, if there was an abandonment of the premises by appellant, no notice of an intention to forfeit the con-

tract would be necessary. Appellant states that respondents moved onto the premises, but it is undisputed that respondents did not move into the house until after appellant had started this action, wherein she acquiesced in what she concluded had been a termination of the contract by respondents.

Having concluded, as did the trial court, that appellant breached the contract by abandoning the premises at a time when respondents were wholly without fault, we hold that no notice of forfeiture was necessary, and that the trial court was justified by the evidence in quieting title in respondents.

We may say in conclusion that we are satisfied that the trial court, in giving appellant thirty days in which to reinstate the contract, did all that good conscience and equity required, and, it not appearing that appellant made any effort to comply with what the court· required her to do, she cannot now complain that the time given her to reinstate the contract was not a reasonable time.

While we do not find in the evidence any support for appellant's claim of misrepresentation, in any event we think appellant waived any such claim when she stated, while on the witness stand, that all she was complaining about was the padlocks on the doors.

We are also of the opinion the court committed no error in allowing respondents attorney's fees in the sum of one hundred dollars.

For the reasons herein assigned, the judgment of the trial court is affirmed.

MALLERY, C. J., STEINERT, ROBINSON, and HILL, JJ., concur.